[Civ. No. 6731.   Third Dist.   Dec. 4, 1941.]

W. A. BADER et al., Appellants, v. WOODROW COALE et al., Respondents.

J. Leroy Johnson for Appellants.

Joseph C. Tope, City Attorney (Stockton), and H. C. Stanley, Assistant City Attorney, for Respondent.

TUTTLE, J.—This action was brought to enjoin respondent city of Stockton (and its council) from erecting a firehouse upon one of its parks. Findings were filed, disposing of all issues in favor of respondents, and judgment was entered denying an injunction. Plaintiffs appeal from said judgment.

As we view it, the only question of any merit arises out of the construction of the deed by which the city acquired the property, and the following provision thereof:

"And it is further provided, and this conveyance is made and accepted upon the further express condition that after the period of twenty-five years from date hereof, said City of Stockton may devote said premises, except the strips heretofore mentioned, to any public benefit or use that in the judgment of the then properly vested powers of the Municipality may deem most wise for public benefit, but in no event is said property to be sold or used commercially or for in-

come purposes *nor shall there ever be allowed on said property any cemetery, incinerator, jail, hospital, crematory or infirmary, house of correction, garbage disposal plants or anything of like character."*

It is the contention of appellants that a firehouse is "of like character" as the preceding uses mentioned.

The rule governing the situation is thus expressed in 6 Cal. Jur. sec. 163, pages 252, 253, 254 and 255:

"The primary object of all interpretation is to ascertain and carry out the intention of the parties. 'To interpret a contract is to ascertain the true intent of the contracting parties.' . . . Intention is to be ascertained from a consideration of the language employed and the subject matter of the contract. Resort is first had to the contract itself; and if the intention is doubtful under the terms of the instrument, the surrounding circumstances may be considered to determine its meaning. The court will ascertain the relation of the parties to each other, and to the subject matter, and if possible, so construe the instrument, however inartificially drawn, as to give effect to the intention of the parties, if it can be done without disregarding the language of the instrument."

It is obvious that the parties contemplated different and other uses at the end of twenty-five years. In a paragraph of the deed preceding the one quoted above, we find the following language:

"Provided, also, and this grant is made upon and accepted subject to the express condition that for the period of twenty-five years from and after the date hereof, said land, except the strips above referred to is to be used and maintained by the City of Stockton as a free, open, public park for recreation and promenade purposes. . . . "

In the clause first quoted above, the use after the expiration of twenty-five years is not limited to park purposes. That restriction is eliminated, and it may be reasonably assumed that thereafter the city might devote the property "to any public benefit or use that in the judgment of the then properly vested powers of the municipality may deem most wise for public benefit." Then follows the language which gave rise to this action. Is a firehouse "of like character" with the uses interdicted? We think not. In disposing of

this phase of the case we adopt the following excerpt from the opinion of the trial judge:

"Plaintiffs argue that the limitation in the deed goes far beyond the enumerated objections, namely, cemeteries, incinerators, jails, hospitals, crematories, infirmaries, houses of correction and garbage disposal plants; and relies upon the phrase, which follows the last named word, 'or anything of like character.' A reasonable interpretation of these words, it is urged, must result in banning the proposed fire engine house on the theory that it is, under a sort of general classification, of like character to the improvements specifically mentioned and prohibited.

"Here we have the crux of the problem. Manifestly the phrase cannot be brushed aside as too uncertain for application. It has a very definite relationship to the words which precede it and must be given, if possible, the meaning intended—or at least the meaning which courts of last resort have given it in similar situations. Obviously the phrase is a precautionary generality, or catchall, and unfortunately, like all such language, is open to conflicting interpretations.

The law, therefore, must adopt a formula to meet such situations and this formula, known as an aid to interpretation, is the doctrine of *ejusdem generis,* which means that when general words follow specific terms (such in this case as jails, hospitals, *et cetera*), the former will be strictly limited in meaning to things of like kind and nature. Words are to be given their ordinary meaning; in interpreting language courts are never justified in searching for subtlety of expression. Intent must be ascertained, not from the subsequent denials or affirmations of the parties, but from the language used in the document under scrutiny; and the parties are presumed to mean, unless the contrary clearly appears, exactly what they say. When there is a controversy as to the meaning of the words or the scope of language, courts invariably resort to the modern dictionary.

"In a definitive sense we are here concerned with but two words of the phrase—'like character.' According to Webster the word 'like' means 'equal in quantity, quality or degree or exactly corresponding,' while the word 'character' is defined (in the sense here used) as 'that by which a thing is especially known or distinguished; a quality; property.' The two words taken together do not imply identity,

but only similarity. (Words and Phrases, 3rd Series, Vol. 40, page 913.) It is clear that in searching for the meaning of the phrase, 'or anything of like character,' the court is governed by the definitions above set forth. The parties may have had several things in mind when they used the phrase. For example, it may be seen at a glance that a clinic could not be established in the park because it is related to a hospital; nor could the city build a mausoleum there because, while not a cemetery, it is certainly of like character. The same may be said of a juvenile detention home because of its similarity to a house of correction. In these random comparisons we have a similarity in fact, not in fancy. But it is a far cry from these illustrations to a fire engine house, which is not similar to any of the prohibited uses; so to hold would render meaningless other language in the quoted provision, namely, the express agreement that the city, after the lapse of 25 years, may devote the premises to such public benefit or use as it may deem wise. It is just as important to give force and effect to this provision as to the phrase on which the plaintiffs rely. As already pointed out, the city, by reason of the objectionable uses specifically enumerated, has little opportunity for making a choice.''

It is the contention of appellants that the uses prohibited are structures used by the city government in conducting the administration of its governmental affairs, and within that group should be placed a ''firehouse.'' We believe that the phrase ''of like character'' was intended to refer not to any classification of governmental functions, but to any actual similarity in a proposed use to each or any of the uses prohibited. Otherwise, the granting of the right to the city to devote the property to any use or public benefit would be practically meaningless.

We find nothing which requires further discussion.

The judgment is affirmed.

Thompson, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 29, 1942.