## Myers Estate

*Edwin M. Buchen*, for trustee.

*Harry C. Stonesifer*, for exceptant.

GROSS, P. J., March 26, 1953.—Under an inter vivos indenture, dated August 26, 1921, Clinton N. Myers placed in trust with the Hanover Trust Company, Hanover, Pa., as trustee, tax-free covenant municipal securities of the value of $100,000, the income from which he directed should be paid his daughter, Henrietta

Myers, now Miller, during her lifetime, with remainder over as in said indenture provided.

The investment clause of the trust indenture, being article 9 thereof, provides as follows:

"Said trustee shall collect the principal of the securities composing the fund when and as they severally shall become due and payable, and shall promptly reinvest the money derived therefrom in tax free covenant securities of the character composing the present fund, whereupon said last mentioned securities shall become part of the corpus of the fund."

In 1950 and 1951 Hanover Trust Company, the original trustee, collected the principal of a number of municipal securities constituting the corpus of the trust, and invested the proceeds therefrom in tax-free covenant securities, commonly known as "Authorities, of the value of $14,327.75, issued pursuant to the "Municipality Authorities Act of 1945," passed by the legislature on May 2, 1945, P. L. 382.

Effective as of December 31, 1952, Hanover Trust Company, trustee, was merged with the First National Bank of Hanover, which latter institution is now known as First National Bank and Trust Company of Hanover; and, by virture of said merger, the said First National Bank and Trust Company of Hanover became the substituted trustee in said trust.

The First National Bank and Trust Company, desiring the approval of this court of the administration of the trust prior to the merger, caused to be filed a first and partial account of the administration of this trust by the Hanover Trust Company, in which account it appears that the balance thereon is made up in part of the investments in "Authorities" of $14,327.75.

The life beneficiary of the trust filed exceptions to said account in which she contends that the investments in "Authorities" by the Hanover Trust Company, the original trustee, were contrary to the investment

clause of the trust indenture above quoted and that the substituted trustee should be directed by the court to dispose of investments.

Exceptant does not contend that the trustee, by investing in "Authorities" did not act with prudence and good judgment. It is an admitted fact by all the parties in interest that the investments were quite as safe and prudent as investments in tax-free covenant municipals. The contention of exceptant is that, under article 9 of the trust indenture, the only investment that the trustee could legally make was in tax-free covenant municipals, because that kind of investments constituted the entire original corpus of the trust.

We cannot agree with the contention of exceptant. The investing clause in the trust indenture says that the trustee shall collect the principal of the securities composing the fund and reinvest the proceeds "in tax free covenant securities of the character composing the present fund." In other words, the reinvestment of funds was not directed by the settlor of the trust to be made in exactly the same kind of investments as constituted the original corpus of the trust, but new investments were to be made in securities of a character of similar quality and safety. We are here concerned in defining the word "character" and giving it such meaning as we believe the settlor of the trust intended that it should have. He certainly did not have in mind, when he executed the trust indenture any such investment as we now know "Authorities" to be, because in 1921, when the trust was created, there were no such investments known as "Authorities." He, therefore, could not have intended to specifically include "Authorities" as investments, and for the same reason he could not have intended to exclude them as trust investments.

In Bader et al. v. Coale et al., 48 Cal. App. 2d 276, 119 P. 2d 763, the District Court of Appeals, Third District of California, gives us a definition of the words

"like character." We quote from the opinion of the court as follows:

"When there is a controversy as to the meaning of the words or the scope of language, courts invariably resort to the modern dictionary.

"In a definitive sense we are here concerned with but two words of the phrase—'like character'. According to Webster the word 'like' means 'equal' in quantity, quality or degree or exactly corresponding, while the word 'character' is defined (in the sense here used) as 'that by which a thing is especially known or distinguished; a quality, property'. The two words taken together do not imply identity, but only similarity."

See also Words and Phrases, 3rd series, vol. 4, page 913. Words and Phrases perm. ed. vol. 25, page 283.

We do not find any appellate court decision in Pennsylvania which defines the word "character" used in the relative sense as here used, but in Smith Trust, vol. 2, Fiduciary Reporter, 393, where trustees were given power to invest in nonlegals but were confined in "their investments and reinvestments to bonds of equivalent classes of securities", Judge Klein, of the Orphans' Court of Philadelphia held that by the phrase "bonds of equivalent classes of securities" settlor did not intend to restrict trustees so that they could not invest in authorized types of legal investments. We are, therefore, of the opinion that, while settlor knew nothing about investment in "Authorities" at the time he executed the trust deed, nevertheless that kind of investment comes clearly within the purview of "tax free covenant securities of the character composing the original trust fund" in this case. True, municipal securities and authorities are not identical, but they need not be so. Similarity is all that is required under the phraseology of the investment clause. Municipals and authorities are similar securities.

There is another reason for our conclusion. We are

convinced that there is legislative sanction for the investment of "Authorities" by this trustee under the provisions of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.

Section 18 of the act provides as follows:

"Directions of Testator or Settlor. The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or non-investment of principal and income and the acquisition, by purchase or otherwise, retention, and disposition, by sale or otherwise, of any property which, at any time or by reason of any circumstance, shall come into his control; and whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act. In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act."

It has been held in Close Trust, 83 D. & C. 136, that the above-quoted act of assembly broadens the legal investment category as to subsequent investments in a preëxisting trust, as is the fact in this case. In our opinion the investment clause in this trust is not an express restriction on the trustee so as to make it illegal for him to invest in any investment authorized by the above-quoted act. Section 5 of the Fiduciaries Act of 1949 authorizes the investment of trust funds in "Authority Obligations" issued pursuant to the Municipality Authorities Act of 1945.

As additional authorities for our conclusion, see Drexel Trust 1 Fid. Rep. 530; Rouse Estate, 2 Fid. Rep. 514, and Fiduciary Review, March 1953.

We, therefore, enter the following

*Decree*

And now, to wit, March 26, 1953, exceptions filed to the first and partial account of Hanover Trust Company, now First National Bank and Trust Company of Hanover, trustee, are dismissed.