[Civ. No. 59824. Second Dist., Div. Five. Mar. 13, 1981.]

ALICE WHITE et al., Plaintiffs and Appellants, v.
MEL DORFMAN et al., Defendants and Appellants.

COUNSEL

Daniel C. Padnick and Michael P. Rubin for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs and Guillermo W. Schnaider for Defendants and Appellants.

OPINION

HASTINGS, J.—Appellants (White et al.) are the owners of property commonly known as 1131 Wallace Ridge Drive in Beverly Hills, which they purchased as a single family residence in 1975. Respondents (Dorfman et al.) are the owners of real property commonly known as 1120 Wallace Ridge Drive, which is located across the street and down hill from appellants' property. Respondents purchased their property as a vacant lot for development as a single family residence and began construction in April 1977.

On October 24, 1977, appellants sought a temporary restraining order and preliminary injunction to stop construction, claiming respondents had violated certain covenants in the declarations of restrictions (CC & Rs) by building a house which would block appellants' view. The preliminary injunction was denied and appellant filed an amended complaint for injunctive relief and damages on March 13, 1978. The matter proceeded to trial in September 1979, and judgment was entered for respondents with costs and attorneys' fees as provided for in the CC & Rs. Thereafter appellants filed a motion for a new trial and a motion to tax costs. On November 26, the court denied appellants' motion for a new trial; on January 14, 1980, the trial court reduced the attorneys' fees awarded respondents. This appeal followed: appellants appeal from the judgment entered in favor of respondents and from the denial of a motion for a new trial; respondents cross-appeal from the order reducing attorneys' fees.

The properties involved in this dispute are located in the area known as Trousdale Estates. At all relevant times this area was governed by CC & Rs which had been recorded in 1955. Paragraph XII of the CC & Rs provided for an architectural committee to oversee the development of the property for the first 12 years, and such a committee did operate until it went out of existence in 1967. The original members of the committee were Paul Trousdale, Willard Lewis and Charles Church. Mr. Trousdale and Mr. Church were also signers of the original CC & Rs. Mr. Church resigned from the committee sometime before it went out of existence.

The center of this dispute turns on an interpretation of two provisions of the CC & Rs. The first provision is paragraph III(b) which reads: "No building, structure or improvement shall be constructed, erected, altered, placed or permitted to remain on any of said lots or any building site on said property exceeding twenty-two (22) feet in height above the ground level, except with the prior written consent and approval of the Architectural Committee." The second provision, paragraph IV, reads: "No hedge or hedgerow, or wall or fence or other structure shall be planted, erected, located or maintained upon any lot in such location or in such height as to unreasonably obstruct the view from any other lot or lots on said Tract."

Respondents' house was completed in February 1979, and was built to a height of 17 feet above the original grade level, well within the 22-foot restriction in paragraph III(b) but clearly blocking appellants'

panoramic view of the city. Appellants maintain that even though the house complies with paragraph III(b), it is subject to the further restrictions of paragraph IV and cannot unreasonably obstruct the view from another lot.

Appellants argue that both paragraphs III(b) and IV apply to a dwelling house and garage; but that paragraph IV is the only "view" provision and it supercedes paragraph III so as to further restrict the height of houses if they interfere with anyone's view.

Respondents argue that both paragraphs are "view" provisions; paragraph III(b) is to apply to a dwelling house and garage and paragraph IV is to apply to hedges or hedgerows, walls, fences and "other structures," meaning structures similar to those listed.

Over the objection of respondents, the trial court allowed testimony from Mr. Donald Lewis, son of one of the original members of the architectural committee and signers of the CC & Rs. Mr. Lewis was active in the sale and development of Trousdale Estates from its inception. He testified that while the architectural committee was in existence certain houses were limited to less than the 22-foot limitation because they unreasonably obstructed the view from other lots. The purpose of the offered testimony was to show that the signers of the document interpreted paragraph IV as applying to dwelling houses. However, the trial court disregarded the testimony since the architectural committee had almost unlimited power under paragraph XII(f) to approve or disapprove building plans, including the proposed height of the building.[1]

---

[1]Paragraph XII(f) states: "Said Architectural Committee or its designated representative shall have power and authority to approve or disapprove the plans and specifications, and the approval of said plans, specifications and plot plan may be withheld not only because of the non-compliance with any of the specific conditions, covenants and restrictions contained in this Declaration, but also by reason of the reasonable dissatisfaction of the Committee with the grading plan, location of the structure on the lot or building site, the finished ground elevation, the color scheme, finish, design, proportions, architecture, shape, height, style and appropriateness of the proposed structure or altered structures, the materials used therein, the kind, pitch or type of roof proposed to be placed thereon, the planting, landscaping, size height or location of trees on the lot or building site, or because of its reasonable dissatisfaction with any or all other matters or things which, in the reasonable judgment of the Committee, will render the proposed structure inharmonious or out of keeping with the general plan of improvement of said property or with the structures erected on other building sites in said tract."

The trial court then ruled that paragraph IV of the CC & Rs does not govern or apply to the height limitation or location of a dwelling house or garage, and that respondents did not violate the restrictions. We agree with the trial court.

In resolving this issue we must independently interpret the provisions of the document. (*Welch* v. *Kai* (1970) 4 Cal.App.3d 374, 378 [84 Cal.Rptr. 619]; *Faus* v. *City of Los Angeles* (1967) 67 Cal.2d 350, 360 [62 Cal.Rptr. 193, 431 P.2d 849].) It is a general rule that restrictive covenants are construed strictly against the person seeking to enforce them, and any doubt will be resolved in favor of the free use of land. But it is also true that the "'intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation.'" (*Ezer* v. *Fuchsloch* (1979) 99 Cal.App.3d 849, 861 [160 Cal.Rptr. 486]; *Lincoln Sav. & Loan Assn.* v. *Riviera Estates Assn.* (1970) 7 Cal.App.3d 449, 463 [87 Cal.Rptr. 150].) The intention of the parties is to be determined from the document as a whole, and if possible still give effect to every part. (*Welch* v. *Kai, supra*, 4 Cal. App.3d 374; Civ. Code, § 1641.)

We believe a fair interpretation of the document and the plain meaning of its language indicate that paragraph III(b) imposes a specific height limit of 22 feet for buildings, structures or improvements, unless the architectural committee gave their prior written consent to build higher. Whether paragraph III(b) is for the purpose of protecting views or not need not be decided here. Paragraph IV by its own terms is a view provision and applies to things other than dwelling houses and garages.

This interpretation of paragraph IV is strengthened by the rule of construction *ejusdem generis*, which means that when general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. (*Sears, Roebuck & Co.* v. *San Diego Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 330, 331 [158 Cal.Rptr. 370, 599 P.2d 676]; see also Civ. Code, § 3534, "Particular words qualify those which are general.") This rule is also applicable to the construction of deeds. (*Bader* v. *Coale* (1941) 48 Cal.App.2d 276, 279 [119 P.2d 763].) In paragraph IV the specific words "no hedge or hedgerow, or wall or fence" are followed by the general term, "or other structure." A dwelling house or garage is not of the same nature or class as a hedge, hedgerow, wall or fence.

This construction is also required by the content and the proximity of paragraphs III and IV. Paragraph III consists of ten subparagraphs, seven of which specifically call out and restrict buildings (the remaining three deal with streets and access). Immediately following paragraph III is the view provision, paragraph IV. Grammatically, the words "other structure" as used in paragraph IV function to pick up items overlooked in the specific enumeration of "hedge, hedgerow or wall or fence." Given the potential of a house or building to affect views, compared to a hedge, fence or wall, and given the emphasis placed on buildings in the prior paragraph which specifically limits their height, it is not logical to further restrict buildings by the catchall phrase "other structures" in a paragraph devoted to hedges, walls and fences.

Appellants argue that the words "other structure" must apply to buildings because throughout the document "structure" and "building" are used interchangeably. We disagree. The word "structure" as used in the CC & Rs has various meanings depending upon the context in which it is used.

Appellants place too much importance on the testimony of Mr. Lewis. Respondents' objections to the testimony were well taken. The CC & Rs disbanded the architectural committee after the first 12 years. The committee's interpretation of the CC & Rs and what the committee did on previous occasions are immaterial. The committee had sweeping power to disapprove houses under paragraph XII(f) and did not need to rely on paragraph IV. Their actions cannot alter the plain meaning of the language in paragraphs III and IV which governed respondents' rights after the committee ceased to exist.

Appellants place great reliance on our opinion in *Seligman* v. *Tucker* (1970) 6 Cal.App.3d 691 [86 Cal.Rptr. 187]. In that case the plaintiff successfully enforced a restriction against an addition to a house. The restriction, abbreviated by the opinion, read: "'No ... structure shall be ... erected ... upon any lot in such location or in such height as to unreasonably obstruct the view from any other lot ....'" (*Ibid.* at p. 693.) The reliance is misplaced. Paragraph IV of the case at bar is not in the identical language as the *Seligman* restriction, as appellant suggests. As previously noted, because of the specific enumeration of hedges, hedgerows, walls or fences, the phrase "other structure" took on a particular meaning as referring to "structures of a similar kind or nature." Furthermore, the interpretation of paragraph IV was made with reference to the CC & Rs as a whole, and specifically in conjunction with para-

graph III. A meaningful comparison cannot be made between the restrictions in the two cases since the *Seligman* opinion is silent on what other provisions were in that document.

Appellants' next argument is that the trial court erred in not granting them a new trial on the basis of newly discovered evidence and surprise.

The alleged new evidence was an affidavit of Charles Church which stated in part: "The phrase 'other structure' as used in this paragraph meant anything that might be built on a lot, other than a hedge, hedgerow, wall or fence, including a house or the main dwelling house to be built on a lot. The phrase 'other structure' was never meant to be limited to other structures similar to a hedge, hedgerow, or wall or fence."

Charles Church was a member of the architectural committee. His evidence, which was mainly cumulative to the testimony of Mr. Lewis and also probably immaterial and irrelevant, could not change the patent language of the CC & Rs.

Furthermore, a motion for a new trial on the grounds of newly discovered evidence is within the discretion of the trial court and will not be disturbed on appeal unless a clear abuse of discretion is shown. (*Ballard* v. *Pacific Greyhound Lines* (1946) 28 Cal.2d 357, 358-359 [170 P.2d 465]; *Cansdale* v. *Board of Administration* (1976) 59 Cal. App.3d 656, 667 [130 Cal.Rptr. 880].)

The essential elements that must be established by appellants are: (1) that the evidence is newly discovered, (2) that reasonable diligence has been exercised in its discovery and production, and (3) that the evidence is material to the movant's case. (*Horowitz* v. *Noble* (1978) 79 Cal.App.3d 120, 137 [144 Cal.Rptr. 710].)

Appellants' attorney by his own admission knew of Charles Church, but had decided against expending additional time and money to locate him. "Your declarant decided it was unnecessary to expend additional time and effort to locate Judge Church[2] or other signators .... Because of all the foregoing, your declarant decided that it was unnecessary to disturb Judge Church by hiring an investigator to locate him." We find no abuse of discretion in the court's refusal to grant a new trial.

---

[2]Judge Church was a well known superior court judge in Los Angeles.

Finally, respondents' cross-appeal, claiming that the trial court abused its discretion in reducing the amount of attorneys' fees in the absence of any declarations or evidence produced by appellants.

■ An award of attorneys' fees is within the sound discretion of the trial court and absent a manifest abuse of discretion we will not interfere with their decision. (*Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686 [76 Cal.Rptr. 7].)

We find no abuse of discretion here. "The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citations.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony.... [Citations.]" *Melnyk* v. *Robledo* (1976) 64 Cal. App.3d 618, 623 [134 Cal.Rptr. 602].)

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.