[No. D001657. Fourth Dist., Div. One. Feb. 18, 1986.]

TICOR TITLE INSURANCE COMPANY, Plaintiff and Appellant, v. RANCHO SANTA FE ASSOCIATION et al., Defendants and Respondents.

COUNSEL

John S. Huiskamp, L. Jean Shannon and Huiskamp & Black for Plaintiff and Appellant.

Michael B. Poynor, Eleanor L. Blais and Sternberg, Eggers, Kidder & Fox for Defendants and Respondents.

OPINION

**STANIFORTH, Acting P. J.**—Ticor Title Insurance Company (Ticor) appeals a judgment affirming Rancho Santa Fe Association's (Association) denial of a variance application from setback regulations for a tennis court.

FACTS

On December 2, 1981, Ticor purchased two acres in the residential community of Rancho Santa Fe. Development of land in Rancho Santa Fe is controlled by the Rancho Santa Fe Protective Covenant (Covenant). The Covenant was adopted in 1927 and has been amended at various times over the years by votes of the homeowners. The Covenant is administered by the Association through its board of directors (Board) and the Association Art Jury (Art Jury).

Under the Covenant, a homeowner must obtain the Association's approval before constructing a tennis court. The Covenant restricts the location of tennis courts by its setback regulations. A homeowner can obtain a variance from the setback requirements based on hardship.

On October 19, 1982, Ticor submitted an application to build a tennis court on its property. The tennis court was located 35 feet from the sideyard lot line. The Association refused to process the application because the

location violated the 50-foot setback regulations adopted by the Board on October 16, 1980, and amended on October 7, 1982.

Ticor then applied to the Art Jury for a variance from the 50-foot setback requirement. The Art Jury held a noticed hearing of the application and on November 9, 1982, denied the variance based on "the unfavorable impact to the neighborhood" and lack of hardship.

Upon denial of its application, Ticor relocated the proposed centerline of the tennis court and submitted another application for a variance. The tennis court encroached slightly on the sideyard 50-foot setback and was within 27 feet of the back lot line. The Art Jury held a noticed hearing and denied Ticor's application on January 11, 1983.

On January 18, Ticor filed an appeal of the Art Jury's decision to the Board. A mediation conference was held on March 8, 1983. After the mediation conference, the Association manager indicated no appeal existed from the Art Jury's decision.

On March 24, 1983, Ticor filed a suit for declaratory relief, contending the Board lacked authority to modify the Covenant's setback requirements from 20 to 50 feet; that even if the Board had the authority, the 50-foot setback regulations were unreasonable; that the Art Jury arbitrarily and capriciously denied its variance applications and that it was wrongfully denied an appeal of the Art Jury's decision. The trial court agreed Ticor had a right of appeal to the Board but otherwise found in favor of the Association.

I

The trial court here found the Covenant as well as the Association's articles of incorporation and bylaws[1] gave the Board broad powers to adopt regulations, that the Covenant's provisions were the minimum requirements

---

[1] Ticor contends the trial court improperly considered the articles of incorporation and bylaws since neither were admitted into evidence at trial but were attached to a declaration submitted on a motion for summary judgment. Ticor argues this court, also, may not consider the articles and bylaws, citing as support for this proposition *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184 [151 Cal.Rptr. 837, 588 P.2d 1261], and *Oldenkott* v. *American Electric, Inc.* (1971) 14 Cal.App.3d 198, 207 [92 Cal.Rptr. 127], cert. den. 402 U.S. 975 [29 L.Ed.2d 140, 91 S.Ct. 1668]. Neither case supports his proposition. These cases concern the appellate court's refusal to consider documents which were not part of the record below. The documents here are part of the record.

Moreover, Ticor does not dispute the accuracy of the articles of incorporation or bylaws considered nor did it object below. In this light, we can find no prejudice and error, if any, was waived.

and the Board was authorized to enact regulations that were more than the minimum requirements. Ticor argues that while the Board may have power to enact regulations the Covenant requires a two-thirds vote of the homeowners to modify or change the setback requirements contained in the Covenant.

■ The fundamental canon of interpreting written instruments is the ascertainment of the intent of the parties. (Civ. Code, § 1636; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 761 [128 P.2d 665]; *Lincoln Sav. & Loan Assn.* v. *Riviera Estates Assn.* (1970) 7 Cal.App.3d 449, 463 [87 Cal.Rptr. 150].) As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit. (Civ. Code, § 1638; *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 931 [218 Cal.Rptr. 839].) A court must view the language in light of the instrument as a whole and not use a "disjointed, single-paragraph, strict construction approach" *(Ezer* v. *Fuchsloch* (1979) 99 Cal.App.3d 849, 861 [160 Cal.Rptr. 486, 13 A.L.R.4th 1333].) If possible, the court should give effect to every provision. (Civ. Code, § 1641; *White* v. *Dorfman* (1981) 116 Cal.App.3d 892, 897 [172 Cal.Rptr. 326].) An interpretation which renders part of the instrument to be surplusage should be avoided. (See *Estate of Newmark* (1977) 67 Cal.App.3d 350, 356 [136 Cal.Rptr. 628]; *Thackaberry* v. *Pennington* (1955) 131 Cal.App.2d 286, 297 [280 P.2d 165].)

■ When an instrument is susceptible to two interpretations, the court should give the construction that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity. *(Battram* v. *Emerald Bay Community Assn.* (1984) 157 Cal.App.3d 1184, 1189 [204 Cal.Rptr. 107].) ■ If a general and a specific provision are inconsistent, the specific provision controls. *(National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 384 [131 Cal.Rptr. 42, 551 P.2d 362].) In sections where general words follow the enumeration of particular classes of things, a court will construe the general words as applicable only to the things of the same nature as the class enumerated. *(Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 330 [158 Cal.Rptr. 370, 599 P.2d 676]; *White* v. *Dorfman, supra,* 116 Cal.App.3d 892, 897.)

II

The articles of incorporation and the Covenant provide the Association with authority to interpret and enforce the restrictions contained in the Covenant. The Covenant also provides: "In interpreting and applying the pro-

visions of this covenant they shall be held to be the *minimum requirements* adopted for the promotion of the health, safety, comfort, convenience and general welfare of the owners and occupants of said property." (Italics added.)

The bylaws of the Association provide the Board with the power: "To make regulations, resolutions and rulings as authorized by the laws of the State, the Rancho Santa Fe Protective Covenant, the Articles of Incorporation, and these Bylaws."

The first declaration of the Covenant which covers Ticor's property is divided into six articles.[2] The first article contains the "General Basic Restrictions." It states in paragraph 14 that the Association "shall adopt such rules and regulations" as it deems advisable and necessary "[t]o maintain the health, safety and general welfare of people residing on said property, and to prevent danger from fires, street traffic, camping and picnicking or other hazards to life and limb or property."

Article I further provides the property owners covenant that: "Par. 36. . . . [T]he Association shall have the right and power to do and/or perform any of the following things, for the benefit, maintenance and improvement of said property:

"Par. 37. (1) Generally, to do any and all lawful things which may be advisable, proper, authorized and/or permitted to be done by the Association under or by virtue of this covenant or of any restrictions, conditions, and/or covenants or laws any time affecting said property or any portion thereof . . . and to do and perform any and all acts which may be either necessary fof, or incidental to the exercise of any of the powers and duties herein authorized and established or as provided in the Articles of Incorporation . . . . The regulations of said Association shall have full force and effect from and after the time of their adoption as provided in the By-Laws of the Association and shall thereafter be as binding upon the owners of said property and each of them their successors and assigns as if set out in full herein."

The trial court here concluded when paragraphs 14, 37 and 149 were read together, they provided the Board with broad authority to enact regulations, including setback regulations which were more stringent than the "minimum requirements" of the Covenant's provision. However, the Covenant

---

[2]The Covenant contains three declarations. The first declaration contains restrictions covering all property in Rancho Santa Fe. The second two declarations contain additional restrictions on certain land within Rancho Santa Fe. When we refer to the Covenant, we mean the first declaration.

also contains an article entitled "Duration, Enforcement, Amendment." (Art. V.) Paragraph 165 in this article specifically addresses modification of the Covenant's provisions contained in article VI. The setback requirements involved here are contained in article VI. Paragraph 165 provides: *"Any of the conditions, restrictions, covenants, reservations, liens or charges set forth in Article VI* hereof, or hereafter established in any declaration, acceptance or covenant of additional restrictions or deed, contract of sale, or lease, approved by the Association as herein provided, and filed for record with said County Recorder, applicable to any part of said property, unless otherwise provided therein, *may be changed or modified by written instrument duly executed and placed of record, with the written approval of the Association and the owner or owners of record of two-thirds in area of the property directly subject to said change or modification;* provided, however, that *no such change or modification shall be made without the written consent duly executed and recorded of the owners of record of not less than two-thirds in area of all said property held in private ownership within five hundred (500) feet in any direction from the property concerning which a change or modification is sought to be made,* and provided further that this shall not be construed as requiring the consent of the owners of any property not under jurisdiction of the Association; and also provided that any approval given thereto by the Association shall not be valid unless and until the Board of Directors shall first have had a public hearing thereon. The phrase 'property directly subject to said change or modification,' as used in this paragraph, shall be taken to mean only the parcel or parcels of said property described in the application for amendment presented to the Association for approval." (Italics added.)

### III

The Association argues paragraph 165 applies only to attempts *to reduce* the Covenant's requirements, e.g., to reduce the setback requirements below the seven-foot to twenty-foot specifications of paragraph 207 and does not prohibit the Board *from increasing* the requirements. The Association's argument is belied by the language of paragraph 165 which states it applies when the Covenant's provisions in article VI are to be *"changed or modified."* (Italics added.)

■ Words in a written instrument are to be understood in their ordinary and popular sense. (Civ. Code, § 1644.) As used in their ordinary sense, the words "changed" and "modified" include any alteration whether involving an increase or decrease. Had the covenanting parties intended the result urged by the Association, they easily could have said so by stating the two-thirds vote of homeowner procedure applied only when the covenant's provisions were to be "limited," "minimized," "decreased," etc.

Since they did not use such restrictive language, we must presume they intended the procedures of paragraph 165 to apply to *any* change or modification in the setback regulations.

The Association alternatively argues paragraph 165 does not represent the exclusive means of altering the Covenant's provisions. It points to paragraph 165's use of the permissive word "may" and the broad powers to enact general welfare regulations in paragraph 14 to support its argument. We are not persuaded.

Initially, we note paragraph 165 is permissive only in that it permits change or modification of the Covenant's restrictions. Nothing in paragraph 165 implies the procedure it delineates is not the exclusive procedure. Had the covenanting parties intended the result now urged by the Association, they easily could have said so. They could have included additional language in paragraph 165 or an additional paragraph in article V, "Duration, Enforcement, Amendment," stating the Covenant's provisions could be changed or modified by the Board acting alone.

Nor does paragraph 14's broad grant of authority to the Association to adopt regulations for the "general welfare" compel a different result. By its express terms, paragraph 14 addresses the Association's power to "adopt" regulations. The action involved here was a *change* or *modification* of existing provisions in the Covenant, an action specifically addressed in paragraph 165. Moreover, even if we construed paragraph 14's authorization to include authorization to adopt regulations altering the Covenant's article VI restrictions, we still would not find paragraph 14 authorized the change by the Board.

Paragraph 14 states the *Association* has the power to adopt rules and regulations for the general welfare. It does not state the *Board* has the power. It does not state the procedure for adopting the rules and regulations. While it may be the Board has power to enact some rules and regulations under paragraph 14 and that setback regulations may fall within the broad perimeters of the general welfare, in the case of these setback regulations in this covenant, the procedure for adopting rules and regulations is set forth in paragraph 165 and that paragraph does not authorize the Board to act alone.

The Association argues that since it is granted the power to interpret the Covenant, it acted properly in interpreting paragraphs 14, 37 and 149 to grant the Board power to enact more stringent setback regulations than those contained in the Covenant. The power to interpret, however, is not unlimited. The Board's construction of its interpretation powers leads to an ex-

traordinary and unjust result. Under this construction, the Board is unlimited in its power to interpret the Covenant as it sees fit even if, as in the instant case, it involves ignoring express language in the Covenant and denigrating the voting rights of the property owners. We do not believe the covenanting parties intended the Board to have such unfettered powers by the process of "interpretation."

### IV

Finally, we note a construction enforcing the procedure outlined in paragraph 165 comports with usual procedures for amending covenants, conditions, and restrictions. (See 2 Ogden's Revised Cal. Real Property Law (Ticor 1975) § 23.27, p. 1156; Advanced Real Property Series, Homeowners Association Program Material (Cont.Ed.Bar 1984) pp. 65, 99; Condominiums and Planned Developments: Representing Owners, Developers and Lenders (Cont.Ed.Bar Program Material 1978) pp. C-78.21, C-127, C-554.) Further, one of the usual requirements for covenants to run with the land and to bind subsequent owners is recordation. (See *Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500, 511 [131 Cal.Rptr. 381, 551 P.2d 1213].) Paragraph 165 ensures changes to the Covenant's provisions will run with the land; a goal presumably intended by the covenanting parties.[3]

■ We conclude the Board was not authorized to enact setback regulations different from those contained in the Covenant; therefore we do not address Ticor's remaining contentions as to the reasonableness of the Board's setback requirements and the Art Jury's denial of its variance application.

The judgment is reversed.

Butler, J., and Mitchell, J.,* concurred.

---

[3]We do not address the issue whether the Board can enact unrecorded regulations that bind subsequent property owners; we merely note that the procedure outlined in paragraph 165 is designed to insure subsequent property owners are bound.

*Assigned by the Chairperson of the Judicial Council.