Filed 2/18/14  Lane v. Cooper CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BRIAN LANE, as Trustee, etc., | D062806 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No.  37-2011-00098517-CU-OR-CTL ) |
| GREGORY J. COOPER, as Trustee, etc., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Law Offices of Douglas A. Cleary and Douglas A. Cleary for Plaintiff and Appellant.

Byron & Edwards, Michael M. Edwards and Robert S. Norman for Defendant and Respondent.

Brian Lane and Gregory J. Cooper are residents in the same housing development. The development is governed by a Declaration of Conditions and Restrictions (CC&Rs). Lane brought suit against Cooper, alleging that Cooper breached the CC&Rs because he

built a second story addition to his home without first obtaining the permission of the architectural jury as required by the CC&Rs. Cooper demurred to the original complaint, arguing the architectural jury no longer existed. The superior court sustained the demurrer, but gave Lane an opportunity to amend the complaint to allege the existence of the architectural jury or facts explaining why he did not have to allege its existence.

Lane filed a first amended complaint, but did not allege the existence of the architectural jury. Instead, Lane offered an interpretation of the CC&Rs that he believed supported his position that he did not have to plead the existence of the architectural jury. The superior court disagreed and sustained Cooper's demurrer to the first amended complaint without leave to amend. Lane appeals the ensuing judgment of dismissal. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Allegations in the Original Complaint*

Lane, as trustee of the Lane Family Trust, owns a house in a development called Muirlands Village Unit No. 2 (Muirlands Village).[1] Lane resides in that home. Cooper,

---

[1]     While this appeal was pending, Lane, in his capacity as trustee of the Lane Family Trust, sold his home in Muirlands Village and no longer lives there. Cooper brought a motion to dismiss Lane's appeal as moot. However, Cooper overlooks the fact that Lane sought damages in his first amended complaint. Accordingly, we deny Cooper's motion to dismiss. (See *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1345.) In any case, because we affirm the judgment here, our denial of Cooper's motion is of no consequence to Cooper. Further, for the sake of clarity, we refer to Lane as a resident and owner of a home in Muirlands Village in this opinion. The fact that he no longer is a resident or owner does not impact our analysis here.

2

as trustee of the Cooper Living Trust 07-15-98, also owns a house in Muirlands Village. Cooper resides in that home.

Union Title Insurance and Trust Company (Union Title) established Muirlands Village. In doing so, Union Title caused the CC&Rs to be recorded. The CC&Rs apply to all residences in Muirlands Village. The general purpose of the CC&Rs is to create a general plan for the protection and benefit of owners of property within Muirlands Village.

Lane alleged that Cooper breached the CC&Rs because Cooper constructed a second story addition to his home without permission of the architectural jury, which Lane claimed was required under the CC&Rs. Based on this alleged breach, Lane sought damages and injunctive relief, including prohibiting further construction of the second story and removal of the existing second story structure.

*The Demurrer to the Original Complaint*

Cooper demurred to the original complaint, emphasizing Lane's failure to plead the existence of an architectural jury. Lane opposed the demurrer, asserting he did not have to plead the existence of an architectural jury. After considering the pleadings and hearing oral argument, the court sustained the demurrer with leave to amend. In doing so, the court instructed Lane that he must allege the existence of an architectural jury at the time Cooper initiated construction of the second story addition or facts that explain why he is not required to plead the existence of the architectural jury.

3

*Allegations in the First Amended Complaint*

Lane filed a first amended complaint that repeats the same allegations as the original complaint. The first amended complaint contains new allegations relating to the creation of the architectural jury and the provisions of the CC&Rs that Lane believes Cooper breached.

In addition to creating the CC&Rs, Union Title created a committee of three people to serve a term of 10 years, commencing on May 12, 1955. Union Title formed this committee to "pass on plans and specifications for proposed buildings to be erected upon [Muirlands Village], as set out in [the CC&Rs]." Although not clear in the first amended complaint, it is implied that the committee is the architectural jury that is mentioned throughout the CC&Rs.

Provision 3 of the CC&Rs states that no dwelling may be more than one story in height without the prior written permission of the architectural jury. In addition, provision 12 of the CC&Rs requires written approval by the architectural jury before the exterior design or color of any structure may be altered.

Lane does not allege that an architectural jury was in existence at the time Cooper began construction of the second story addition to his home. Instead, he claims that he need not do so because Cooper's building of a second story addition violated provisions 3 and 12 of the CC&Rs. Lane insists neither of these provisions require him to plead the existence of the architectural jury because they do not contemplate the absence of the architectural jury.

4

Lane also alleges that Cooper's construction of a second story addition is not "in harmony" with the other homes in Muirlands Village because "the overwhelming majority of the homes" are single story.

Based on Cooper's construction of a second story addition to his home, Lane alleges causes of action for breach of the CC&Rs and injunctive relief. Lane seeks an injunction preventing further construction of the second story and requiring removal of the second story as well as damages.

*Demurrer to First Amended Complaint*

Cooper demurred to the first amended complaint, arguing the first amended complaint does not adequately explain why Lane does not need to plead the existence of an architectural jury. Lane opposed the demurrer, arguing that it was sufficient for him to plead his reasonable interpretation of the CC&Rs, his interpretation supports his belief he did not have to plead the existence of an architectural jury, and thus, the first amended complaint adequately pled a cause of action for breach of the CC&Rs.

After considering the pleadings and hearing oral argument, the superior court sustained the demurrer without leave to amend. The court stated:

> "In its ruling of March 23, 2012, the Court found that the existence of an Architectural Jury is a precedent fact necessary to Lane's claim that the addition of a second story, in and of itself, is a violation of the CC&Rs. Lane failed to sufficiently address this defense to his causes of action and has failed to plead facts that constitute any viable cause of action against Cooper. Moreover, contrary to plaintiffs [sic] contentions, the Conditions and Restrictions attached to the first amended complaint are not ambiguous and plaintiffs [sic] amended allegations fail to state an interpretation that is reasonably susceptible."

5

DISCUSSION

I

*A COMMENT ON THE BRIEFS*

Before we address the merits of this appeal, we briefly discuss the briefs in this case. The opening brief begins with a hypothetical. A hypothetical may prove an effective tool in a brief. It can help to elucidate a difficult concept in more understandable terms. A hypothetical may introduce the reader to the theme of a party's brief. It also can provide additional explanation regarding the impact of a particular legal rule or principle. Here, the hypothetical fails to achieve any purpose.

The hypothetical compares Cooper to an unruly teenager. It is not advisable to disparage the opposing party, especially in the first paragraph of the opening brief. The hypothetical also compares a nonexistent architectural jury to the teenager's parents, who leave their home for dinner, but return a few hours later. We see no similarities between parents leaving home for a short while and an architectural jury that does not exist.

In addition, the hypothetical is alienating. It assumes the reader is male. This is not a safe assumption in this court where five of the ten justices are female. Indeed, two of the three justices on this panel are female. It is not good appellate strategy to begin a brief with a hypothetical that may disaffect two of three members of the panel hearing the case.

Cooper's respondent's brief is not without its flaws. On the second page, Cooper informs this court that Lane has ignored other violations of the CC&Rs and has focused on Cooper's residence because it blocks Lane's mother's view. However, Lane's mother

is not a resident of Muirlands Village and does not have standing to bring suit. Cooper also laments the "considerable expense" of having to litigate the dispute further if this court reverses the superior court's order. There is no valid purpose for providing this information to this court. Apparently, Cooper seeks to ridicule Lane and engender sympathy for himself. Cooper's arguments in this regard are mere diversions. They detract from the strength of Cooper's valid arguments by distracting the court. In the future, Cooper's counsel would be wise to refrain from such tactics.

II

*STANDARD OF REVIEW*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "When reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true . . . ." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 (*Campbell*).)

"In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the

7

parties."  (Code Civ. Proc., § 452.)  "Reversible error is committed if the facts alleged show entitlement to relief under any possible legal theory."  (*Duggal v. G.E. Capital Communications Services* (2000) 81 Cal.App.4th 81, 86.)

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse."  (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.)  In reviewing the sustaining of a demurrer, we review the trial court's result for error, and not its legal reasoning.  (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.)

Here, Lane contends the court committed reversible error by sustaining Cooper's demurrer to the first amended complaint without leave to amend.  He asserts that he stated a valid cause of action for breach of the CC&Rs based on his reasonable interpretation of the CC&Rs and Cooper's construction of a second story addition to his home in violation of the CC&Rs.  In the alternative, Lane argues that even if we reject his interpretation of the CC&Rs, the first amended complaint should have survived demurrer because he alleged Cooper's second story addition is not "in harmony with similar structures" in Muirlands Village as required by the CC&Rs.  We disagree.

III

*THE CC&RS*

A.  Interpretation of CC&Rs

The superior court sustained the demurrer based on its interpretation of the CC&Rs.  Recorded CC&Rs are contracts.  (*Frances T. v. Village Green Owners Assn.*

8

(1986) 42 Cal.3d 490, 513; *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 575.)  We review the interpretation of a contract de novo unless the interpretation turns on the credibility of extrinsic evidence.  (*Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 843.)  Here, the court based its interpretation of the text of CC&Rs only and found that the CC&Rs were not ambiguous.

We interpret CC&Rs under contract principles (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 380-381) and analyze them as contracts with each buyer of property subject to them (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 363).  "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."  (Civ. Code, § 1643.)  "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  ( *Id*., § 1641.)  "To the extent practicable, the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless." (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027.)

## B.  Provision 9 of the CC&Rs

" 'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party.  If it is not, the case is over.  [Citation.]' "  (*Oceanside 84, Ltd. v.*

*Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.) Here, the parties dispute the meaning of provision 9 of the CC&Rs. Lane maintains that provision 9 only applies to entirely new construction, i.e., construction of a new dwelling on an unimproved lot. Under Lane's interpretation, new construction does not encompass modifications to an existing structure on a lot. Thus, Lane contends that provision 9 does not apply to the construction of Cooper's second story addition. In contrast, Cooper asserts that provision 9 applies more broadly to include any construction on a lot in Muirlands Village, regardless of whether the lot is unimproved. As such, under Cooper's interpretation, provision 9 would govern the construction of his second story addition.

Provision 9 of the CC&Rs is entitled "Plans and Specifications, Etc." and specifically addresses the absence of the architectural jury. It provides in full:

> "That no building or other structure shall be commenced upon any of said lots until the location and the complete plans and specifications, including the color scheme, of each building, fence and/or wall to be erected upon the lot have been approved in writing by an Architectural Jury; provided, however, that in the event no such Jury is in existence or the Architectural Jury fails to approve or disapprove such location, plans and specifications within thirty days after the submission thereof to it, then such approval will not be required, provided any building so to be erected conforms to all other conditions and restrictions herein contained and is in harmony with similar structures in said Muirlands Village Unit No. 2."

Lane contends that the phrases "no building or other structure shall be commenced upon any of said lots" and "each building, fence and/or wall to be erected upon the lot" evidence provision 9 only applies to new construction. Lane argues the word "commence" means "to begin; start; originate." He also asserts "to be erected" is clearly written in the future tense. As such, Lane reasons that these terms connote that provision

10

9 only deals with new construction, which he insists would not include the construction of a second story addition on an existing house.

As a threshold matter, we note that there is nothing in provision 9 that expressly refers to "new construction" only. Instead, provision 9 uses the general terms "building or other structure." A building is a "roofed and walled structure built for permanent use (as for a dwelling)." (Webster's Collegiate Dict. (11th ed. 2006) p. 162.) A second story addition to a home fits this definition. It has a roof and walls and is built for permanent use. A structure is "something (as a building) that is constructed." (*Id.* at p. 1238.) As the definition of a structure includes a building, a second story of a home would fit this definition as well. In addition, the word "commence" and the phrase "to be erected" merely refer to acts in the future. The building of a second story can be commenced, and a second story can be erected.

Lane also maintains his position is further buttressed by provision 9's reference to "the location and the complete plans and specifications, including the color scheme of each building, fence and/or wall to be erected upon the lot" because an "addition" to a building (e.g., a second story) would not require a location or plans and specifications. We disagree.

A second story clearly requires a location. As its name implies, it will be built on top of the first story. In addition, Lane merely asserts without any basis that a second story would not require any "complete plans and specifications." We see no reason to conclude that a second story addition is so different from a construction of an entirely new dwelling that it would not require plans and specifications before it is built.

11

In summary, there is nothing in provision 9 that leads us to believe that it only applies to "new construction" as urged by Lane.

## C. Provisions 3 and 12 of the CC&Rs

"A court must view the language in light of the instrument as a whole and not use a 'disjointed, single paragraph, strict construction approach.' [Citation.] If possible, the court should give effect to every provision. [Citations.] An interpretation which renders part of the instrument to be surplusage should be avoided. [Citations.]" (*Ticor Title Ins. Co. v. Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726, 730 (*Ticor*).)

Lane contends other provisions of the CC&Rs, specifically provisions 3 and 12, show that provision 9 could only apply to new construction. Provision 3 states: "That no dwelling or out-building shall be more than one story in height, without the prior written permission of the Architectural Jury." Provision 12 provides: "That no alteration shall be made in the exterior design or color of any structure unless such alteration, including any addition, shall first been approved in writing by the Architectural Jury." Lane argues provisions 3 and 12 apply to Cooper's construction of a second story addition to his residence, not provision 9.

In addition, Lane emphasizes that provision 2 requires the architectural jury to provide written permission prior to a resident being permitted to move an existing building, but specifically refers to the procedure in provision 9. Thus, according to Lane, the drafters of the CC&Rs were aware of the risk that the architectural jury may not exist and provided for a procedure in dealing with that possibility in provisions 2 and 9. However, because provisions 3 and 12 neither include the same procedure as in provision

12

9 nor reference provision 9, they absolutely require written approval of the architectural jury even if the architectural jury does not exist. Lane insists his interpretation is necessary or it would render provisions 3 and 12 superfluous.

We agree with Lane that a court should interpret contractual language in a manner that does not render provisions of the contract unnecessary. (See *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 957 ["An interpretation rendering contract language nugatory or inoperative is disfavored."].) That said, we also are guided by the principle that "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643; see *Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1111 (*Powers*).) Here, it is clear that the drafters of the CC&Rs wanted any modifications to existing structures, additional construction, and new construction to be approved by the architectural jury. Lane's and Cooper's respective interpretations of the CC&Rs are consistent in this regard. However, the two interpretations diverge in the event the architectural jury does not exist.

Although not pointed out by Lane, several other provisions of the CC&Rs require written permission from the architectural jury before a resident can begin construction: provision 4 (dwelling without garbage disposal), provision 5 (square footage of patios), provision 6 (color of roofs), provision 7 (height of deck or balconies), and provision 10 (use of second-hand material). Along with provisions 3 and 12, these provisions make no reference to provision 9 or the possible absence of the architectural jury.

Under Lane's interpretation of the CC&Rs, a resident of Muirlands Village could build an entirely new house on an undeveloped lot or move an existing building without the approval of the architectural jury if the architectural jury did not exist. Yet, according to Lane, any resident who wanted to: (1) change the color of the exterior of his or her home or the color of the roof, (2) build a second story addition, (3) have a patio larger than the square footage of the dwelling's ground floor; (4) have a dwelling without a garbage disposal; or (5) use second-hand materials must have the written permission of the architectural jury even if it does not exist. In other words, these changes could not be made without violating the CC&Rs even if no architectural jury existed. Such an interpretation makes little sense. Lane offers no compelling justification for placing such a heavy burden on a resident of Muirlands Village who wants to modify his or her existing home while allowing almost unfettered construction of an entirely new dwelling in the same development. Lane's interpretation is unreasonable. (See Civ. Code, § 1643; *Powers*, *supra*, 54 Cal.App.4th at p. 1111.) How is a resident to get written approval from the architectural jury when it does not exist? She cannot and there is no justifiable reason for reading such an onerous duty into the CC&Rs. Accordingly, we conclude Lane's interpretation of the CC&Rs is unreasonable, and therefore, we determine that the superior court did not err in sustaining Cooper's demurrer to the first amended complaint. (See *Oceanside 84, Ltd. v. Fidelity Federal Bank*, *supra*, 56 Cal.App.4th at p. 1448.)

14

### D. Lane's "Pleaded Meaning" of the CC&RS

Lane also contends that, under *Ticor*, *supra*, 177 Cal.App.3d 726, he has alleged a "pleaded meaning" to which the CC&Rs are reasonably susceptible so the first amended complaint should have survived demurrer. We are not persuaded.

Lane's reliance on *Ticor*, *supra*, 177 Cal.App.3d 726 is misplaced. *Ticor* did not involve a demurrer, but a trial. (*Id*. at p. 730, fn. 1.) We reversed the trial court's interpretation of the contract, applying general contract interpretation principles and relying on the plain text of the contract and the board's by-laws and articles of incorporation. (See *id*. at pp. 730-734.) Nothing in *Ticor* supports Lane's position here.

Although *Ticor*, *supra*, 177 Cal.App.3d 726 is not helpful to Lane, Lane makes a passing reference that he has alleged "his interpretation of the CC&Rs in an effort to overcome the demurrer as allowed in *Aragon-Hass v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232." Lane is correct that *Aragon-Haas* states that when a complaint is based on a contract that is set out in full in the complaint, a general demurrer must admit the contents of the instrument and any pleaded meaning to which it is "reasonably susceptible." (*Id*. at p. 239.) However, *Aragon-Haas* involved an ambiguous employment contract. There, the court stated, " '[W]here an ambiguous contract is the basis of an action, it is proper . . . for a plaintiff to allege its own construction of the agreement. So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.' " (*Ibid*.) "Whether a contract is ambiguous is a question of law." (*Ibid*.)

15

We conclude that the CC&RS are not ambiguous. They contain no language that is reasonably susceptible to the meaning that Lane ascribes to them. Moreover, Lane's interpretation makes the CC&Rs harsh, unjust, and inequitable and results in absurdity. (Cf. *Ticor*, *supra*, 177 Cal.App.3d at p. 730.)

Further, Lane's argument ignores the allegations of his own complaint. This is not a case involving contradicting extrinsic evidence. Both Lane and Cooper only use the text of the CC&Rs in support of their respective interpretations. Generally, "[t]he interpretation of a contract is a judicial function." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125.) This general principle is especially applicable here where we simply have to interpret a contract based solely on its words. (See Civ. Code, § 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."]; Civ. Code, § 1638 [the "language of a contract is to govern its interpretation . . . ."].)

At the heart of Lane's interpretation of the CC&Rs is his desire to create a de facto ban on the construction of a two-story home or second story addition in the absence of the architectural jury. Indeed, Lane notes that provision 9 requires any construction that falls under it to "conform to all other condition and restrictions" of the CC&Rs. Thus, if an owner wants to build a new, two-story home, Lane contends that he or she must not only comply with provision 9, but also provision 3, which addresses the addition of a second story. Because provision 3 requires written permission of the architectural jury, Lane argues new construction of a two-story home would violate both provision 9 and provision 3 if it was built without architectural jury approval, despite the fact that

16

provision 9 explicitly allows the construction to proceed absent architectural jury approval when the architectural jury does not exist. Thus, Lane contends provision 3 trumps provision 9 and requires the written approval of the architectural jury without exception before a second story structure may be built. In other words, without the existence of an architectural jury, there can be no construction of a second story home in Muirlands Village.

Regardless of whether provision 3 supersedes provision 9's procedure for dealing with an absence of the architectural jury, Lane's argument overlooks the lack of an architectural jury rendered impracticable the requirement in provision 3 that Cooper obtain written approval from the architectural jury prior to building a second story addition. The duty to perform an obligation under a contract may be discharged where performance is made impracticable by the nonoccurrence of an event that the parties assumed would occur. (See *Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 Cal.App.4th 1001, 1017, citing Rest.2d Contracts, § 261.) Here, when the CC&Rs were recorded, they made reference throughout to an architectural jury. Near in time to the recording of the CC&Rs, Union Title also appointed a committee that apparently was intended to be the architectural jury. Thus, it is clear that, at the time the CC&Rs came into effect, residents assumed the existence of an architectural jury. However, based on the record before us, it appears the architectural jury has not been in existence since May 12, 1965 through no fault of Cooper. Therefore, a nonoccurrence of an event (the continuation of the architectural jury) caused Cooper's obligation to obtain written approval from the architectural jury to become impracticable. Cooper therefore had no

17

duty under the CC&Rs to obtain approval of the architectural jury before commencing construction of his second story addition even if we were to adopt Lane's interpretation of provision 9.

Although impracticability of a contract is generally an affirmative defense (cf. *Schmeltzer v. Gregory* (1968) 266 Cal.App.2d 420, 424), on the record before us, it was proper for the superior court to sustain the demurrer to the first amended complaint and consider the absence of the architectural jury in doing so. The first amended complaint included the CC&Rs as an exhibit and incorporated them by reference. Provision 9 of the CC&Rs provided a potential defense to the alleged breach (nonexistence of the architectural jury). Accordingly, the complaint itself disclosed a defense on its face that bars recovery. (See *Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971-972; *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635.) The presence of this potential defense to the action led the superior court to consider the dueling interpretations of the CC&Rs as well as interpret the CC&Rs as a matter of law. The superior court did not err in doing so.[2]

---

[2]    In any event, in light of our interpretation of the CC&Rs, we would not reverse judgment on the technical ground that impracticability is an affirmative defense. Lane concedes the architectural jury did not exist when Cooper began construction of the second story addition. It would be a colossal waste of time and resources to reverse the judgment and remand the matter back to superior court, only to have Cooper file an answer containing an impracticability affirmative defense and then move for summary judgment, which undeniably would be successful.

18

## E. In Harmony With Similarly Situated Structures

Lane's final argument is that the court erred in sustaining the demurrer because it did not consider his allegation that, if provision 9 applied to all construction, Cooper's second story addition was not "in harmony with similar structures" in Muirlands Village as required in provision 9. We reject this contention.

Lane alleges that Cooper's second story addition to his home violated provision 9 because it "is not in harmony with similar structures in said Muirlands Village Unit No. 2, since the overwhelming majority of the homes in Muirlands Village Unit No. 2 are single story." He makes no other allegation explaining why the second story addition is not "in harmony" with similar structures. However, Lane's own allegations indicate that other homes in Muirlands Village are two story. And the CC&Rs contemplate two-story homes or the addition of a second story. We therefore conclude that Lane's conclusory allegation that Cooper's second story addition is not in harmony with other structures does not state a valid cause of action for breach of the CC&Rs.

"The plaintiff has the burden of proving that an amendment would cure the defect." (*Campbell*, *supra*, 35 Cal.4th at p. 320.) Here, Lane has not carried his burden. As discussed above, Lane bases his claim that Cooper's addition is not "in harmony with similarly situated structures" entirely on the fact that it is a second story. He does not offer any additional allegations in his opening or reply briefs indicating additional facts that he could plead to further explain why the second story addition is not "in harmony with similar structures" in Muirlands Village. Accordingly, we are satisfied that the superior court did not abuse its discretion in sustaining the demurrer to the first amended

19

complaint without leave to amend.  (See *City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.)

DISPOSITION

The  judgment is affirmed.  Cooper is awarded his costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.