Filed 3/13/14  Antone v. Malaret CA2/2

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RON ANTONE et al., | B247907 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. SC114522) |
| v. | |
| CHARLES MALARET et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Cesar C. Sarmiento, Judge.  Affirmed.

Charles Malaret and Jennifer Malaret, in pro per., for Defendants and Appellants.

Rosario Perry; Richard B. Miller for Plaintiffs and Respondents.

* * * * * *

Plaintiffs and respondents Ron Antone, Deborah Antone, Simon Halff and Malihe Halff (sometimes collectively plaintiffs), the uphill neighbors of defendants and appellants Charles Malaret and Jennifer Malaret, sought injunctive relief and damages after appellants installed a heating and air conditioning unit on their roof. Plaintiffs claimed the unit violated applicable conditions, covenants and restrictions (CC&Rs) by unreasonably obstructing their ocean and coastline view. Following trial, the trial court agreed, ruling on the basis of the evidence, which included its own observations, that the unit unreasonably interfered with the view.

We affirm. The trial court properly interpreted the CC&Rs to apply to appellants' unit and the evidence supported the trial court's exercise of discretion in finding removal of the unit was warranted because it unreasonably obstructed plaintiffs' view.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Tract and Its CC&Rs.*

Tract 23453 (Tract) is comprised of 18 homes in the Marquez Knolls area of the Pacific Palisades neighborhood in Los Angeles. The Tract is governed by CC&Rs that were first recorded in 1960. The CC&Rs are three pages long and comprised of 15 separate restrictions.

Relevant here, paragraph 1 provides: "All said parcels shall be known and described as residential parcels, no structure shall be erected, altered, placed or permitted to remain on any building plot other than one detached single-family dwelling not to exceed one story in height and a private garage, for not more than three cars; except; where, in the judgment of the Declarant and approved by the Architectural Committee, one two-story single-family dwelling may be erected where said dwelling will not detract from the view of any other parcel of land." Paragraph 11 provides: "No fences or hedges exceeding three feet in height shall be erected or permitted to remain between the street and the front set-back line nor shall any tree, shrub or other landscaping be planted or any

2

structures erected that may at present or in the future [unreasonably][1] obstruct the view from any other parcel, and the right of entry is reserved by the Declarants to trim any tree obstructing the view of any parcel."

### *Appellants' Rooftop Unit.*

Plaintiffs and appellants own homes and reside in the Tract. Plaintiffs Ron and Deborah Antone own the residence at 1079 Glenhaven Drive, and Simon and Malihe Halff own the residence at 1103 Lachman Lane, while appellants own the residence at 1084 Glenhaven Drive. Appellants' residence was built in 1959 and had not been upgraded when they purchased it in June 2011. The home is a flat-roof, single story residence with no sub-floor or attic. The roof line varies from nine to 11 and ½ feet from ground level and an over six-foot wide chimney extends approximately four feet above the roof line.

After they purchased the property, appellants remodeled the interior of the home but did not change the exterior structure or roof line. Part of the remodel required replacement of the heating system; the home did not have air conditioning. Appellants' contractor, architect and HVAC subcontractor informed them that the best alternative for providing both heat and air conditioning would be to replace the existing heater with a compact combined heating and air conditioning rooftop unit (HVAC unit). On the basis of this recommendation, appellants made the decision to install their three and one-half tall by four-foot wide HVAC unit on their roof, and the City of Los Angeles signed off on the installation in August 2011. Prior to installing their HVAC unit, appellants took into account that a substantial majority of the Tract's flat roof homes—12 out of 14—already contained HVAC or some other type of equipment on the roof. Eight of the 14 homes contained rooftop HVAC units.

In connection with their remodel, appellants also removed several large trees that had exceeded the residence's roof line.

---

[1] See *Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618, 629 (*Zabrucky*), discussed in section II.A., *post.*

*The Pleadings.*

Shortly after the installation of the HVAC unit, plaintiffs complained about it to appellants. Plaintiffs filed their complaint in October 2011, alleging a cause of action for injunctive relief on the basis of the unit's placement, a second cause of action for injunctive relief for overgrown trees and landscaping, and third cause of action for damages for the same items. They alleged that the placement of appellant's HVAC unit and growth of their landscaping violated the CC&Rs. Appellants answered, generally denying the allegations and asserting several affirmative defenses. The trial court denied plaintiffs' requests for a temporary restraining order and a preliminary injunction, both seeking the removal of the HVAC unit. Subsequently, it denied appellants' motion for summary judgment. In connection with that motion, the trial court made a site visit.

*Trial and Statement of Decision.*

For the purpose of trial, the parties stipulated to several basic facts, including the applicability and validity of the CC&Rs. In their case-in-chief, plaintiffs submitted photographs of appellants' HVAC unit and banana tree as viewed from various angles on plaintiffs' properties. They also offered declarations submitted by appellants in connection with various pretrial matters and indicated they intended to rely on the trial court's previous site visit. In rebuttal, plaintiff Simon Halff testified that when he remodeled his own home he located the kitchen specifically to capture the ocean and coastline view over appellants' roof. Depending on where he stood in his kitchen, the HVAC unit blocked his view of the Santa Monica Pier. Plaintiff Ron Antone testified about tree-trimming arrangements with neighbors.

In addition to the testimony of Jennifer Malaret, Keith Natvig (the ex-husband of appellants' home's prior owner) and Daniel Chudnovsky (appellants' expert architect), appellants offered discovery responses, photographs of their property as well as other properties in the Tract, their compilation of other homes in the Tract also having rooftop HVAC units or other structures, and their expert's view impact analysis. On the basis of his analysis, Chudnovsky opined that appellants' HVAC unit obstructed .001 percent of

4

plaintiffs' view. Though he had not performed an analysis of the level of obstruction from plaintiffs' kitchen, he characterized the obstruction as "de minimus in nature."

In lieu of oral closing arguments, the trial court directed the parties to submit closing briefs. Twice during trial, the trial court indicated that it intended to make another site visit before rendering a decision, but nothing in the record suggests that the trial court did so. After receipt of the briefs, the trial court issued a minute order ruling in favor of plaintiffs on their first cause of action for injunctive relief concerning the HVAC unit and in favor of appellants on the remaining two causes of action. Framing the relevant question as "whether the roof-top air-conditioning unit unreasonably obstructs the Plaintiffs' views," the trial court stated it had viewed the subject property and ruled: "[T]he subject HVAC unit unreasonably interferes with Plaintiffs' views. It is true that many other homes in the area have similar HVAC units. However, the Court cannot find as a matter of law that those other HVAC units do not unreasonably interfere with the view of a neighbor. In addition, the burden is on a homeowner who wishes to challenge whether an HVAC unit or other 'structure' is unreasonable and it is likely that other homeowners have simply not desired to take on such a burden." Acknowledging that appellants' expert's characterization of the obstruction as less than one percent of the view may be statistically true, "the HVAC unit is, as Plaintiffs argue, an 'eye sore' in an otherwise immaculate view. There is no case authority for the position that some particular percentage obstruction is required in order to deem a structure 'unreasonable.'" The trial court expressly rejected appellants' attempt to analogize the obstruction to that created by chimneys, explaining "chimneys are not 'eye sores' in the same manner that Defendants' HVAC unit is." Extending this reasoning to its ruling on the second cause of action, the trial court further explained that, like a chimney, "a palm tree is in no way an 'eye sore,' similar to an HVAC unit."

The parties submitted proposed judgments, and on March 28, 2013 appellants filed their notice of appeal. The parties then filed objections to each other's proposed judgments, as well as revised proposed judgments, and the trial court entered judgment on April 23, 2013, finding in favor of plaintiffs on their first cause of action and ordering

5

that the HVAC unit be removed forthwith and that no other HVAC unit be placed on the roof by appellants or their successors in interest. In June 2013, appellants filed a second notice of appeal from the judgment.

### *Appellate Motions.*

This matter has generated several motions and applications filed both before and after briefing. We previously granted the application of amici, Tract homeowners Judith A. Gelfand and Wayne Marcus, to file an amicus brief in support of plaintiffs. We note that the brief contains endorsements by a number of other Tract homeowners. We also granted appellants' motion to augment the record on appeal to include a November 27, 2012 order on plaintiffs' motion in limine.

We previously denied appellants' motion to consolidate and plaintiffs' motion to dismiss. Both motions related to appellants' filing a premature notice of appeal before judgment was entered and subsequently filing a separate notice of appeal after entry of judgment that generated a second case No. (2nd Civ. No. B249990). We elected to treat the premature notice of appeal filed in case No. B247907 as being filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2) ["The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment"]; see *In re Conservatorship and Estate of Edde* (2009) 173 Cal.App.4th 883, 889 [applying Cal. Rules of Court, rule 8.104(d)(2) to a premature notice of appeal in the interest of judicial economy].) Because plaintiffs' motion to dismiss was directed to the operative appeal, on our own motion we dismissed case No. B249990.

Two matters remain pending. First, we grant appellants' request to take judicial notice of a brief filed by amici in another case. (Evid. Code, § 452, subd. (d)(1) [judicial notice of state court records].) Second, we grant appellants' motion to augment the record with a declaration of counsel filed in support of plaintiffs' motion for an award of attorney fees (attached as Exhibit A to the motion) and deny the motion to augment the record with photographs of the exterior of amici's and some of the endorsers' homes (attached as Exhibit B to the motion). (Cal. Rules of Court, rule 8.155(a)(1)(A) ["At any

6

time, on motion of a party or its own motion, the reviewing court may order the record to be augmented to include: . . . [¶] Any document filed or lodged in the case in the superior court"].)

## DISCUSSION

Appellants maintain the trial court should not have entered a permanent injunction requiring them to remove the HVAC unit because the trial court misinterpreted the CC&Rs, the evidence did not support the trial court's conclusion that the unit unreasonably obstructed plaintiffs' views and a less intrusive remedy was appropriate. We conclude appellants' contentions afford no basis for reversal of the judgment.

### I.     Standard of Review.

"The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. [Citation.] The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard.' [Citation.] We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's order. [Citation.]" (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390; accord, *People ex rel. Trutanich v. Joseph* (2012) 204 Cal.App.4th 1512, 1520; *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.) A trial court's discretionary "ruling 'will be sustained on review unless it falls outside the bounds of reason.' [Citation.] We could therefore disagree with the trial court's conclusion, but if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882.)

We independently review the legal issues in connection with the trial court's ruling, including the interpretation of a statute or CC&Rs. (*Classis of Central California v. Miraloma Community Church* (2009) 177 Cal.App.4th 750, 759; *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974.)

7

**II.     The Trial Court Properly Construed the CC&Rs by Finding Paragraph 11 Applied to the HVAC Unit.**

####     A.     *Judicial Interpretation of Paragraph 11.*

The trial court ruled that paragraph 11 of the CC&Rs governed its evaluation of the HVAC unit.  In reaching this conclusion, it relied heavily on *Zabrucky, supra,* 129 Cal.App.4th 618, a case that also involved an interpretation of the CC&Rs at issue here, and, in particular, paragraph 11.  The plaintiff John Zabrucky and his wife resided in the Tract and filed a complaint for declaratory and injunctive relief against their neighbors after learning the defendants planned a remodel that would interfere with the Zabruckys' unobstructed ocean view.  (*Id.* at pp. 620-621.)  They alleged the proposed remodel violated paragraph 11 of the CC&Rs, which then precluded the erection of any structures "'that may at present or in the future obstruct the view from any other lot . . . .'"  (*Id.* at p. 622.)  Though finding that the proposed remodel did obstruct a portion of the Zabruckys' view, the trial court concluded that the drafters of the CC&Rs could not have intended to prevent the construction of a home that might block a portion of another homeowner's view.  It construed paragraph 11 as being limited to landscape-type structures and on that basis declined to find the remodel violated paragraph 11.  (*Id.* at pp. 621, 623.)

The Court of Appeal reversed.  It acknowledged that much of the value of the homes in the Tract depended on the quality of the view, stating:  "To significantly obstruct any homeowner's view of the Pacific Ocean is to depreciate the economic worth of their property—often by several hundred thousand dollars—as well as dramatically reduce their enjoyment of the home they bought and live in."  (*Zabrucky, supra,* 129 Cal.App.4th at pp. 623-624.)  For that reason, the court opined:  "It seems highly unlikely those who framed Paragraph 11 intended to limit its protections to 'fences, hedges and landscaping' and not to the erection of other kinds of 'structures' that might significantly destroy the views and value of homes in the Marquez Knolls development."  (*Id.* at p. 624.)  It further explained that "[w]hen the lots were first sold and houses designed and constructed, views were protected by an architectural committee whose approval was required for the design and placement of all structures constructed on the lots.  But once

8

the lots were built out and the architectural committee disbanded, Paragraph 11 was the only remaining restriction against what otherwise could be unlimited structural additions (at least single story ones) to some original existing residences at the expense of the views enjoyed by other homeowners." (*Ibid*.)

Despite the significance of views in the Tract, the court found unreasonable an interpretation of the plain language of paragraph 11 that would prohibit the erection of "any structures" that obstructed another lot's view. (*Zabrucky, supra*, 129 Cal.App.4th at p. 629.) It found no support in the language of the CC&Rs for the trial court's effort to ameliorate the seeming harsh effect of paragraph 11 by limiting the "structures" to landscape-related structures and to residences. (*Id*. at p. 627.) Instead, it concluded "it would be in keeping with the intent of the drafters of the CC&Rs to read into Paragraph 11 a provision that the view may not be unreasonably obstructed, thus the sentence would read, 'may at present or in the future <u>unreasonably</u> obstruct the view from any other lot.' (Change underlined.)" (*Id*. at p. 629.) It further concluded that this interpretation comported with Tract's architectural committee's approval of the Tract's layout in which homes partially block the view from other homes. (*Ibid.*). It finally determined that what is reasonable or unreasonable should be ascertained "'in light of the matter and the circumstances involved.'" (*Ibid*.)

### B.       *Paragraph 11 Applied to this Dispute.*

In its order, the trial court determined: "Without any authority to the contrary, the Court is bound by the interpretation of Paragraph 11 of the CC&Rs in *Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618. The relevant question, therefore, is whether the roof-top air-conditioning unit unreasonably obstructs the Plaintiffs' views." Appellants argue that the trial court misread the CC&Rs to the extent it concluded they could be read to prohibit the installation of a rooftop HVAC unit and also to the extent it determined paragraph 11 applied to the HVAC unit.

Preliminarily, we note that appellants mischaracterize the trial court's ruling in connection with their argument. The trial court did not prohibit the installation of all rooftop equipment. The trial court did not find that other HVAC units unreasonably

9

interfered with other homeowners' views. And therefore, the trial court did not engage in a construction of the CC&Rs that was unique to appellants' property. (See generally, *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 84 ["A requirement for upholding covenants and restrictions in common interest developments is that they be uniformly applied and burden or benefit all interests evenly"].)

To the contrary, the trial court initiated its inquiry by determining whether the CC&Rs could be construed to apply to an HVAC unit. It properly relied on *Zabrucky, supra,* 129 Cal.App.4th 618, to conclude that paragraph 11's reference to "any structures" encompassed an HVAC unit. Parsing the phrase, the *Zabrucky* court explained "the word 'any' is defined to mean 'of whatever kind' or 'without restriction.' [Citation.] And 'structure' means '[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together (a building is a structure).' [Citation.]" (*Zabrucky, supra*, at p. 628.) While the *Zabrucky* court interpreted "any structures" to encompass the addition of several rooms to an existing residence, the phrase is equally capable of being interpreted to include an HVAC unit. (*Ibid*.)

The trial court also properly rejected appellants' argument that "any structures" cannot be construed to refer to rooftop equipment because such items are covered only by paragraph 8 of the CC&Rs. That provision states: "No television or radio aerial shall be erected with a height in excess of eight feet above roofs on residence nor radio broadcasting towers constructed without the approval of the Architectural Committee." The trial court reasoned that paragraph 8 was inapplicable because it addressed only television and radio antennae and not HVAC units. Appellants advocate a broader construction of the paragraph, claiming it evidences an intent to permit the installation of incidental rooftop equipment below a height of eight feet.

We disagree. We construe CC&Rs according to general principles of contract interpretation. (*Harvey v. The Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 817.) Thus, "[t]he language of the CC&Rs governs if it is clear and explicit, and we interpret the words in their ordinary and popular sense unless a contrary intent is shown. [Citations.]" (*Ibid*.) Paragraph 8 plainly addresses only a "television or radio aerial," and

10

there is no suggestion in the paragraph's language that it was intended to apply to anything beyond the two items expressly identified. (See *Sayble v. Feinman* (1978) 76 Cal.App.3d 509, 515 ["This court has neither the power to make for the parties a contractual arrangement which they themselves did not make nor to insert in the agreement language that appellants now wish were there"].)

We likewise reject appellants' argument that "any structures" cannot encompass an HVAC unit because the term "structure" as used in the CC&Rs is limited to some type of building. Appellants acknowledge the word "structure" has varying meanings throughout the CC&Rs. (See *White v. Dorfman* (1981) 116 Cal.App.3d 892, 898 ["The word 'structure' as used in the CC&Rs has various meanings depending upon the context in which it is used"].) Nonetheless, they maintain that in each instance "structure" means a type of building structure and never a type of equipment.

Again we disagree. In each separate paragraph in which the word "structure" appears, it is modified by another word or phrase that is designed to clarify the word's meaning.[2] In certain paragraphs, the word "structure" is designed to mean a residence; for example, paragraph 4 uses the phrase "residential structure," while paragraph 7 refers to the "main structure." Other paragraphs indicate that a building is intended in view of references to a structure being on the "land" or a "building plot." Still other paragraphs suggest entirely different meanings of the word. For example, paragraph 6 involves

---

[2]  In addition to paragraph 11, the word "structure" appears in eight other paragraphs. We briefly quote each use in context: Paragraph 1 ("no structure shall be erected, altered, placed or permitted to remain on any building plot"); paragraph 2 ("existing structures on the land"); paragraph 4 ("[n]o residential structure shall be erected or placed on any building plot"); paragraph 6 ("[n]o structure of a temporary character . . . shall be at any time used as a residence"); paragraph 7 ("[t]he ground floor of the main structure . . . shall not be less than 2000 square feet"); paragraph 9 ("[n]o part of any residential parcel shall . . . nor shall any building or structure be used or maintained for any [specified commercial] purpose"); paragraph 12 ("[n]o fence or wall exceeding three feet in height shall be erected . . . except wherein the owner shall have first obtained the approval in writing of the proposed structures"); paragraph 13 ("[n]o derrick or other structure designed for use in boring mining or quarrying . . . shall ever be erected").

11

structures "of a temporary character," while in paragraph 12 the phrase "proposed structures" specifically relates back to specified types of walls or fences. Only in paragraph 11 does the word "structure" appear with the modifier "any," and it is the sole paragraph that is directed to structures, other than dwellings, that affect the view. We construe the CC&Rs as a whole, giving effect to every part to the extent reasonably practicable. (Civ. Code, § 1641.) Guided by this principle of interpretation, we construe the context in which the word "structure" appears in paragraph 11 in light of the word's varying use throughout the CC&Rs, and conclude that the phrase "any structures" encompasses an HVAC unit.

## III. The Trial Court Did Not Abuse Its Discretion In Determining the HVAC Unit Unreasonably Obstructed Plaintiffs' Views.

Once it determined the relevant question was whether the HVAC unit violated paragraph 11, the trial court found that the unit unreasonably interfered with plaintiffs' views. We will not disturb the trial court's ruling "without a showing of a clear abuse of discretion. [Citation.]" (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1180.) Appellants maintain that there was a clear abuse of discretion because the trial court applied an improper "eye sore" standard, there was insufficient evidence of an unreasonable obstruction and the trial court's ruling was inconsistent with governing case law.

We note at the outset that "the question of reasonableness is ordinarily one of fact." (*Elgin Capital Corp. v. County of Santa Clara* (1975) 57 Cal.App.3d 687, 692.) "[N]umerous decisions exist which indicate that courts will readily deal with the attributes of reasonableness or unreasonableness." (*Seligman v. Tucker* (1970) 6 Cal.App.3d 691, 697; see, e.g., *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [whether the plaintiff's reliance on a misrepresentation was reasonable]; *Brasher's Cascade Auto Auction v. Valley Auto Sales & Leasing* (2004) 119 Cal.App.4th 1038, 1059 [whether conduct was commercially reasonable under California Uniform Commercial Code]; *County of San Luis Obispo v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 869, 874 [whether delay in paying workers' compensation benefits was

12

unreasonable]; *Chateau Chamberay Homeowners Assn. v. Associated International Ins. Co.* (2001) 90 Cal.App.4th 335, 346 [whether insurer's claims-handling conduct was reasonable]; *Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 377 [whether behavior allegedly causing emotional distress was reasonable].)

Here, the trial court made a reasonableness determination and found that the HVAC unit unreasonably obstructed plaintiffs' views. In reaching that conclusion, it relied on its own site visit to the Tract and view of the HVAC unit. It found that the HVAC unit was "an 'eye sore' in an otherwise immaculate view." It specifically rejected appellants' argument that the HVAC unit was reasonable because it obstructed only a small portion of plaintiffs' view, stating "[t]here is no case authority for the position that some particular percentage of obstruction is required in order to deem a structure 'unreasonable.'" It found that the presence of rooftop HVAC units on other Tract homes did not render this HVAC unit reasonable, noting the presence of other units meant simply that other homeowners had elected not to challenge their installation. It likewise concluded that the presence of chimneys on appellants' and other Tract homes did not render the HVAC unit reasonable, finding that chimneys were "not 'eye sores' in the same manner that Defendants' HVAC unit is."

"'A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate." (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 646.) Like any judgment, a permanent injunction, notwithstanding its discretionary component, must be sufficiently supported by the evidence. (*Ibid.*) Here, the trial court's observation of the HVAC unit during its site visit was sufficient evidence to support its findings. (E.g., *Wade v. Campbell* (1962) 200 Cal.App.2d 54, 62 ["A trial judge's view of property with the consent of counsel is evidence in the case and may be used alone or with other

13

evidence to support the findings"]; *Orchard v. Cecil F. White Ranches, Inc.* (1950) 97 Cal.App.2d 35, 41 ["the trial court visited the premises and made a complete inspection thereof. The information obtained by him from such inspection and view of the premises is itself evidence and may be used alone or with other evidence to support the court's finding"]; *Noble v. Kertz & Sons Feed & Fuel Co.* (1945) 72 Cal.App.2d 153, 159 ["the trial judge may view the locus in quo for the purpose of understanding the evidence introduced; and, . . . where the view is with consent, what is then seen is itself evidence and may be used alone or with other evidence to support the findings"].)

We find no merit to appellants' argument that the trial court's finding the HVAC unit was an "eye sore" was not the equivalent of finding it unreasonably obstructed plaintiffs' view. Indeed, the trial court expressly found the HVAC unit unreasonably interfered with plaintiffs' view and characterized the unit as an "eye sore" to explain how the obstruction was unreasonable even though it blocked only a small portion of plaintiffs' view. The CC&Rs provide no guidance as to what amounts to an unreasonable obstruction. There is no requirement that the obstruction reach a particular magnitude before it may be considered unreasonable. Frequently, a determination of reasonableness involves a weighing of several factors. (See, e.g., *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 873 [outlining factors a court may consider in determining the reasonableness of attorney fees]; *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914-915 [outlining factors a court may consider in determining the reasonableness of parent's efforts to reunify with a child]; *People ex rel. Dept. of Transportation v. Acosta* (2009) 178 Cal.App.4th 762, 773 [outlining factors a court may consider in determining the reasonableness of an offer and demand in a condemnation action].) Here, nothing precluded the trial court's considering the quality rather than the quantity of the obstruction as a factor in determining whether the HVAC unit unreasonably obstructed the view.

14

We likewise find no merit to appellants' second argument that there was insufficient evidence to support the trial court's finding. They point exclusively to evidence they offered showing that other homes in the Tract had similar HVAC units, as calculated by their expert the amount of the obstruction was miniscule and they improved plaintiffs' view by cutting down or trimming a number of trees. But "[a] party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218; accord, *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410 ["An appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it"].)

Here, in addition to its site visit, the trial court received testimony from plaintiffs about the obstruction. Halff testified that he remodeled his kitchen in order to capture the view of the ocean and coastline of the Santa Monica Bay, including the city lights. He stated that before the HVAC unit was installed, he could see the entire coastline; after the HVAC unit was installed, "[i]t blocked a good portion of [the city lights view], a large portion of it. Every time we walk into the kitchen you get hit by something in your face." He added that when viewed from various angles, the HVAC unit completely blocked the view of the Santa Monica Pier. Plaintiffs also submitted several photographs showing the extent of the obstruction. Further, the trial court received evidence that appellants' roofline had an over two-foot height difference in various areas, and the HVAC unit was installed on the higher portion of the roof.

Appellants' evidence did not undermine the evidence on which the trial court relied. Though appellants offered evidence of several other similar HVAC units erected on homes in the Tract, they offered no evidence to show the extent to which those units blocked another lot's view or to show another homeowner had claimed any unit blocked a view. Further, the trial court expressly considered appellants' expert's quantitative assessment of the view impact from the HVAC unit, commenting at trial "[i]t's just a

15

number you are giving me," and thereafter finding no authority for the principle that a certain amount of a view must be obstructed in order for the obstruction to be unreasonable. In any event, it is within the trial court's discretion to accept or reject an expert's testimony. (*In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 384.) Finally, the trial court heard testimony about the relatively recent overgrowth of the trees on appellants' property. The testimony demonstrated not only that appellants' tree-trimming and removal served to maintain rather than enhance plaintiffs' views, but it also highlighted the qualitative difference between an HVAC unit and a tree in the view.

Finally, we reject appellants' contention that the trial court's ruling is inconsistent with case law interpreting the same and similar CC&Rs. As first noted in *Seligman v. Tucker, supra*, 6 Cal.App.3d at page 697, what is reasonable or unreasonable must be determined "in light of the matter and circumstances involved . . . ." Applying that principle, the *Seligman* court affirmed an injunction requiring the defendant homeowners to remove an addition from their residence or lower it three feet because it unreasonably obstructed the view from another lot in violation of a restrictive covenant. (*Seligman v. Tucker, supra,* at pp. 695, 696.) Similarly evaluating the circumstances involved, the courts in both *White v. Dorfman, supra,* 116 Cal.App.3d 892 and *Zabrucky, supra,* 129 Cal.App.4th 618 determined whether restrictive covenants governing structures applied to new or remodeled residences. *White v. Dorfman* held that a newly constructed home on vacant lot, which was built below the covenants' height limit for buildings but obstructed a neighbor's city lights view, did not violate another covenant providing that "'[n]o hedge or hedgerow, or wall or fence or other structure shall be planted, erected, located or maintained upon any lot in such location or in such height as to unreasonably obstruct the view from any other lot or lots on said Tract.'" (*Id*. at p. 896.) In light of the context in which the phrase "other structure" appeared, the court concluded that it was intended to apply to things other than buildings. (*Id*. at p. 897.) The court in *Zabrucky, supra,* at page 627, contrasted that covenant with paragraph 11. While the *White v. Dorfman* covenant included the phrase "other structure" in a seamless list of items, in paragraph 11 "[t]he term 'structures' appears in an entirely separate clause with its own

16

verb, 'erected.' But even more significantly this general term is not preceded by the qualifier 'other,' which might imply 'structures similar to (or related to) landscaping,' but rather by the broadest possible qualifier 'any.' So the plain language of the Paragraph 11 restriction prohibits the erection of '*any* structures' which obstruct views on an adjoining property." (*Zabrucky, supra,* at pp. 627-628.) Thus, beyond applying the specific covenants to the obstruction at issue, neither case addressed what other types of structures might be reasonable or unreasonable under the circumstances.

In sum, we find no basis to disturb the trial court's exercise of discretion in concluding the HVAC unit unreasonably obstructed plaintiffs' view in violation of paragraph 11 of the CC&Rs.

## IV.     The Trial Court Did Not Abuse its Discretion by Ordering the Removal of the HVAC Unit.

Appellants' final argument is directed to the scope of relief ordered by the trial court. They contend ordering the removal of the HVAC unit was overly burdensome, and the trial court should have ordered something less intrusive, such as directing them to construct something that would make the HVAC unit less of an eye sore or to cover it with landscape screening. The scope of a permanent injunction is matter within the trial court's discretion. (*City of Claremont v. Kruse, supra,* 177 Cal.App.4th at p. 1180.) As plaintiffs point out, appellants offered no evidence below to support their contention that something short of removal would remediate the view obstruction created by their HVAC unit. Absent such evidence, we cannot conclude the trial court abused its discretion in ordering the HVAC unit's removal. (*Ibid*. [exercise of discretion must be supported by evidence]; *Art Movers, Inc. v. Ni West, Inc., supra,* 3 Cal.App.4th at p. 646 [same].)

17

**DISPOSITION**

The judgment is affirmed.  Plaintiffs are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *

           FERNS

We concur:



_____, Acting P. J.

   ASHMANN-GERST



_____, J.

   CHAVEZ

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.