Filed 9/8/21  Fakheri v. Rubinstein CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PARVIZ FAKHERI, Plaintiff and Respondent, v. ARTURO RUBINSTEIN et al., Defendants and Appellants. | B297422 (Los Angeles County Super. Ct. No. BC659534) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Tesser │Grossman, Brian M. Grossman and Gina Marie Simas, for Defendants and Appellants.

Cohen & Cohen, Barry L. Cohen and Kerry A. Cohen, for Plaintiff and Respondent.

## I.     INTRODUCTION

Arturo Rubinstein (Rubinstein) and Fab Rock Investments LLC (Fab Rock) (together, defendants) and Yoram Yehuda, doing business as Malibu Development and Construction, (Yehuda) orally agreed to purchase, renovate, and sell a residential property.  When the property was sold, defendants did not pay Yehuda what he believed was his share of the proceeds and he brought an action against them.  Following a bench trial, the trial court found that defendants breached their oral agreement with Yehuda and awarded him $866,171 plus prejudgment interest.[1]  Defendants appeal, contending that the court abused its discretion in failing to apply their unclean hands affirmative defense to Yehuda's action and erred in considering in its decision two notices of judgment liens that were filed in this case, but not admitted in evidence at trial.  We affirm.

---

[1]     After the judgment was entered, Yehuda transferred his entire interest in the judgment to Parviz Fakheri.  On May 3, 2021, we granted Fakheri's motion to be substituted for Yehuda as a party to this appeal.

## II.    BACKGROUND[2]

A.    *Yehuda's Complaint*

In his complaint,[3] Yehuda alleged that in June 2013, he and defendants entered into an oral joint venture to purchase, renovate, and sell the residence at 19107 Wells Drive in Tarzana (Wells Drive joint venture).  Defendants and Yehuda agreed that each would contribute 50 percent of the purchase price and would share equally in all expenses, liabilities, and profits from the Wells Drive joint venture.  Title to the Wells Drive property was taken in the name of Fab Rock, Rubinstein's alter ego, to be held for the benefit of the Wells Drive joint venture.

On June 18, 2013, the parties purchased the Wells Drive property for $998,000.  Of that purchase price, Yehuda contributed $601,154 and defendants contributed $396,846.  On April 30, 2015, the parties sold the Wells Drive property for $1,678,500, and the proceeds were deposited into Rubinstein's bank account 19111 Wells Dr. LLC.  After the parties paid off a loan on the Wells Drive property, $1,010,000 remained from the sale.  Although Yehuda's 50 percent share of that sum was $505,000, defendants paid him only $190,000.

---

[2]    Except for facts necessary for context, we limit our recitation of facts to those necessary to resolve defendants' unclean hands affirmative defense and claim of evidentiary error.

[3]    Yehuda alleged eight causes of action in his complaint.  The trial court found defendants liable under Yehuda's third cause of action for breach of contract.

3

B.    *Trial Evidence*

    1.    Evidence of Yehuda's Creditors

Attorney Howard Goodman represented Golnaz and Michael Davoodifar and Michelin and Guy Roche in a judgment collection matter against Yehuda.  The judgment predated the Wells Drive joint venture.  Yehuda had not made any payments toward satisfying the judgment.  At the time of trial, Yehuda owed $1.7 million on the judgment.

Attorney Michael Berke represented Jacob Tikosky in a judgment collection matter against Yehuda.  That judgment was entered in 2003—prior to the Wells Drive joint venture.  In 2005, following an appeal, the trial court awarded Tikosky attorney fees, increasing the judgment to $643,000.  Thereafter, the judgment accrued interest until Berke began his representation in 2007.  Since 2007, Yehuda had not made any payments on the judgment.

    2.    Yehuda's Financial Contributions to the Wells Drive Joint Venture

In response to a special interrogatory admitted at trial, Yehuda claimed he made two $300,000 contributions to the purchase of the Wells Drive property.  The first contribution came from Yehuda's Malibu Development bank account.  The second contribution came from Fab Rock's bank account.  Yehuda explained that his contribution from the Fab Rock account "belonged to him by virtue of deposits that had been made into that account, which were credited to him . . . ."  Yehuda then

4

identified seven deposits totaling $908,102.47. At trial, apparently in reference to Yehuda's first contribution, the parties stipulated that Yehuda provided three cashier's checks totaling $300,000 for the purchase of the Wells Drive property.

In response to another special interrogatory admitted at trial, Yehuda claimed that the parties used the 19111 Wells Dr. LLC bank account to pay the Wells Drive joint venture's expenses. Twelve deposits totaling $456,667.54 were made on his behalf into that account.

C.    *Statement of Decision*

In its Statement of Decision, the trial court found that the parties orally agreed to purchase and renovate the Wells Drive property. Under the agreement, the parties were to divide costs and profits on a 50/50 basis. The court rejected Rubinstein's argument that he and Yehuda modified the oral agreement so that Rubinstein and Fab Rock became the sole owners of the Wells Drive property, with Yehuda receiving back his alleged $300,000 investment and receiving 10 percent of the construction costs as a fee for overseeing the construction. The court found Rubinstein's argument "absurd" and likely made up "out of thin air."

The trial court found that Yehuda contributed $625,000 of the purchase price of the Wells Drive property and Rubinstein contributed $372,000. As for construction costs, the court found that Yehuda contributed $378,725 and Rubinstein contributed $38,948. After accounting for other expenses, the court awarded Yehuda $866,171 plus prejudgment interest for defendants' breach of contract.

5

As for defendants' unclean hands affirmative defense, the trial court found "that the evidence does, in fact, support a potential finding of unclean hands by Yehuda, in that the evidence did preponderate that Yehuda's actions during the relevant time periods were designed to hide his true assets and to hinder and/or delay the collection of his outstanding judgments by his judgment creditors. For example: it was clear that the manner in which Yehuda obtained the monies (which were utilized to purchase and to improve the subject property) through various and alleged 'loans' without supporting documentation, and the manner in which he transferred monies throughout various bank accounts, vis-à-vis various legal entities, was designed to essentially make himself 'judgment proof,' and designed to hinder, delay or prevent the collection of these outstanding and considerable money judgments against him."

The trial court also found that, to some degree, Yehuda's "unclean hands" conduct was directly connected to the subject matter of his lawsuit as the funds he contributed toward the purchase and renovation of the Wells Drive property were funds he had hidden from his creditors. Nevertheless, any finding of unclean hands by Yehuda did not result in a successful affirmative defense because Rubinstein also had unclean hands. The court found that Rubinstein knew of and "was *an active and willing participant* in Yehuda's scheme to defraud his creditors . . . ." That is, Rubinstein had allowed Yehuda to use various Rubinstein bank and credit card accounts to hide assets. The court observed, "It would seem axiomatic, that a party who wishes to assert an unclean hands defense, should not have unclean hands himself."

The trial court rejected Rubinstein's argument that if the court failed to apply defendants' unclean hands affirmative defense, it would be an accessory to Yehuda's unclean hands. The court noted that two notices of judgment liens apparently had been filed in the case and the attorney for one of Yehuda's judgment creditors testified in trial and so was aware of the possibility of a judgment in Yehuda's favor. It doubted "that Yehuda [would] be able to 'complete' his fraud by means of this particular case."

The trial court further found that the money Yehuda invested in the Wells Drive joint venture was his personal property.

## III. DISCUSSION

### A. *Unclean Hands*

Defendants claim the trial court abused its discretion in failing to apply their unclean hands affirmative defense to Yehuda's action. Yehuda's hands were unclean, they argue, because Yehuda used the Wells Drive joint venture to conceal money from his creditors.

#### 1. Standards of Review

"When an appellant contends the evidence is insufficient to support a judgment, order, or factual finding, we apply the substantial evidence standard of review. 'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the

7

power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below.  [Citation.]  We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.'  [Citation.]  'Substantial evidence' is not synonymous with 'any' evidence; rather, it means the evidence must be of ponderable legal significance, reasonable, credible, and of solid value.  [Citation.]  An appellate court presumes in favor of the judgment or order all reasonable inferences.  [Citation.]  If there is substantial evidence to support a finding, an appellate court must uphold that finding even if it would have made a different finding had it presided over the trial.  [Citations.]  An appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact.  [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957–958 (*Cahill*).)

We review a trial court's decision whether to apply the doctrine of unclean hands for an abuse of discretion.  (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109.)  A trial court abuses its discretion when it applies the wrong legal standard.  (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

2.     Legal Principles

"The defense of unclean hands arises from the maxim, ""He who comes into Equity must come with clean hands.""  [Citation.] The doctrine demands that a plaintiff act fairly in the matter for

8

which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim. [Citations.] The defense is available in legal as well as equitable actions. [Citations.]" (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 (*Kendall-Jackson*).)

"'The essence of the "clean hands" doctrine is not that the plaintiff's hands are dirty but "that the manner of dirtying renders inequitable the assertion of such rights against the defendant."' [Citation.] 'It is not every wrongful act, nor even every fraud, which prevents a suitor in equity from obtaining relief.' [Citation.] 'It is settled that the act upon which equity may refuse relief to a plaintiff because he does not come into court with clean hands must prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.' [Citation.] 'It must have been conduct which, if permitted, inequitably affects the relationship between the plaintiff and the defendant.' [Citations.]" (*Martin v. Kehl* (1983) 145 Cal.App.3d 228, 239, fn. 1 (*Martin*); *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 283 (*Brown*) ["'If he [the wrongdoer] is not guilty of inequitable conduct toward the defendant in that transaction, his hands are as clean as the court can require.' (2 Pomeroy, A Treatise on Equity Jurisprudence (5th ed. 1941) § 399, p. 97; see *Bradley Co. v. Bradley* (1913) 165 Cal. 237, 242, . . . [citing *Pomeroy* and stating, 'His misconduct must be so intimately connected to the injury of another with the matter for which he seeks relief, as to make it inequitable to accord him such relief']"].)

3.    Analysis

    a.    Defendants' unclean hands

Defendants contend the trial court declined to apply the unclean hands doctrine based on an erroneous view of the law—that a defendant's unclean hands are relevant to the defense. For the proposition that a court may not consider a defendant's unclean hands, they rely on the following statement in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.* (1945) 324 U.S. 806 (*Precision*): "[the unclean hands doctrine] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, *however improper may have been the behavior of the defendant*." (*Id.* at p. 814, italics added; see also *Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 123 [quoting *Precision*]; *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 638 [same]; *Burton v. Sosinsky* (1988) 203 Cal.App.3d 562, 573–574 [same].)

Defendants misconstrue *Precision*'s holding. The "improper behavior" the Supreme Court referred to is the behavior underlying a lawsuit that brings a defendant before a court, not "unclean hands" behavior by a defendant. That is, the unclean hands doctrine may apply regardless of how meritorious a plaintiff's claim or how serious a defendant's contractual breach or other asserted liability. (See *Kendall-Jackson, supra,* 76 Cal.App.4th at p. 978 [citing *Precision, supra,* 324 U.S. at pages 814 to 815 for the proposition that a plaintiff "must come into court with clean hands, and keep them clean, or he will be denied relief, *regardless of the merits of his claim*" (italics added)].)

10

Moreover, a trial court "must consider the material facts affecting the equities between the parties" in deciding whether to exercise its discretion to apply the unclean hands doctrine. (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447; see also *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 180 ["A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute"].)

Defendants further argue that there was "little, if any, compelling evidence that Rubinstein was aware of Yehuda's concealment of assets from his creditors." The trial court found, "There can be no reasonable doubt, in this Court's mind, that Rubinstein himself had actual knowledge that Yehuda was [hiding assets] and in fact, Rubinstein allowed Yehuda to utilize[] Rubinstein's various bank or credit card accounts . . . to perpetuate this fraud against Yehuda's creditors. This includes giving Yehuda complete unfettered access to the Fab Rock bank account by means of literally signing 100 [plus] of blank checks in advance. In short, Rubinstein was *an active and willing participant* in Yehuda's scheme to defraud his creditors in this manner."

Defendants contend that Yehuda was truthful when he testified that the money in the 19111 Wells Dr. LLC bank account and the 100 plus pre-signed checks were used to pay construction costs.[4] Also, Rubinstein testified that the only access he gave Yehuda to any of his bank accounts was the 100

---

[4]     Although it appears the trial court was mistaken when it identified the Fab Rock bank account as the source of the checks, which bank account was the source of these checks is immaterial to any issue on appeal.

11

plus pre-signed checks from the 19111 Wells Dr. LLC account. Accordingly, defendants argue, there was no substantial evidence that Rubinstein knew of or participated in Yehuda's scheme to defraud his creditors.

Defendants' argument is unavailing. At a time when Yehuda had large judgment debts and pursuing creditors, defendants allowed him to deposit large sums of money—over $1.3 million—into the Fab Rock and 19111 Wells Dr. LLC bank accounts. Yehuda used the monies in those accounts to finance the Wells Drive joint venture—the vehicle Yehuda used to defraud his creditors. Yehuda's and Rubinstein's conduct was reasonable, credible, and solid evidence that Rubinstein knew about and assisted in Yehuda's fraudulent conduct. (*Cahill, supra*, 194 Cal.App.4th at p. 958.)

### b. Yehuda's unclean hands

Because Yehuda's unclean hands conduct—concealing money from his creditors—was not directed at defendants and did not prejudice them, the trial court did not abuse its discretion in denying defendants' unclean hands affirmative defense. (*Martin, supra*, 145 Cal.App.3d at p. 239, fn. 1; *Brown, supra*, 192 Cal.App.4th at p. 283; see also, *Jay Bharat Developers, Inc. v. Minidis* (2008) 167 Cal.App.4th 437, 445, quoting *Kendall-Jackson, supra*, 76 Cal.App.4th at p. 979 ["'The misconduct must ""'prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief'""]; 2 Schwing, Cal. Affirmative Defenses (2021) § 45:3 (2d ed.) ["courts have ruled that the party seeking to invoke the unclean hands doctrine must have been injured by the alleged

wrongful conduct"].)  Yehuda's concealment of money from his creditors in the Wells Drive joint venture was not directed at and did not prejudice defendants.  Instead, his concealment was directed at his judgment creditors and only benefited defendants—the property was sold at a profit and defendants shared in that profit.

B.    *The Notices of Judgment Liens*

Defendants contend the trial court erred in considering two notices of judgment liens filed in this case because the notices were not admitted at trial.  By failing to object below, defendants have forfeited appellate review of this issue.

As noted above, the trial court rejected in its Statement of Decision Rubinstein's argument that it should not allow Yehuda to use the judicial system to complete his fraud on his creditors by returning to him money he had hidden from those creditors.  It stated, "There apparently have been two separate Notice of Judgment Lien's [*sic*] filed by such creditors in this case.[Fn. omitted.]  Indeed, the attorney representing one of the major judgment creditors . . . actually testified in this case at trial.  One could conclude that he is aware of these proceedings and the possibility of a judgment in this case in favor of Yehuda.  Hence, this Court doubts that Yehuda will be able to 'complete' his fraud by means of this particular case."  In the omitted footnote, the court identified notices of judgment liens filed on August 21, 2017, and December 5, 2018.[5]

---

[5]    Defendants' claim that "the record is devoid of any evidence of such liens" is meritless as their own appendix on appeal contains a notice of judgment lien attorney Berke filed on behalf

13

In response to the trial court's Statement of Decision, defendants filed Defendants' Specification of Controverted Issues on Which Defendants Request a Statement of Decision objecting to parts of the court's Statement of Decision. Those objections did not include an objection to the court's reference to or reliance on the notices of judgment liens. By failing to object, defendants forfeited appellate review of their claimed error. (*Ticor Title Ins. Co. v. Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726, 729 [a claim that the trial court erred in relying in its decision on documents contained in the record but not admitted at trial was forfeited by the failure to object in the trial court].)

---

of Tikosky on August 30, 2017, and a judgment lien attorney Goodman filed on behalf of the Davoodifars and Roches on December 5, 2018.

## IV.   DISPOSITION

The judgment is affirmed.  Fakheri is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.